UNITED STATES of America,
Plaintiff-Appellee,

v.

Aubrey Baker DAVIS, Jr., a/k/a Junior Baker Davis, a/k/a Baker Davis, and Margaret Davis, Defendants-Appellants.

No. 80–7329.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 22, 1982.

Rehearing Denied Feb. 23, 1982.

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Muller & Kirkconnell, Chandler R. Muller, Warren W. Lindsey, Winter Park, Fla., for defendants-appellants.

Miriam D. Wansley, Asst. Atty. Gen., Macon, Ga., for plaintiff-appellee.

Before RONEY, VANCE and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

Aubrey Baker Davis, Jr., Margaret Davis, their daughter Sandra Davis Yeagley and Franklin Daly Cochran were indicted in November 1979 in the Middle District of Georgia. Count I charged them with conspiracy to possess with intent to distribute and conspiracy to distribute methaqualone in violation of 21 U.S.C. §§ 841(a)(1) and 846. Count II charged Mr. Davis and Cochran with possession with intent to distribute methaqualone in violation of 21 U.S.C. § 841(a)(1) and charged Mrs. Davis and Yeagley with aiding and abetting in violation of 18 U.S.C. § 2. Count III charged Cochran with traveling in interstate commerce to carry on an unlawful business enterprise in violation of 18 U.S.C. §§ 1952(a)(3) and 1952(b)(1) and charged Mr. Davis, Mrs. Davis and Yeagley with aiding and abetting in violation of 18 U.S.C. § 2. Yeagley was acquitted on all charges. Mrs. Davis was found guilty on Counts I and II and was sentenced to two concurrent five year terms, to be followed by a special parole term of ten years on Count II. The court required her to serve six months, suspended the balance, and placed her on probation for a period of five years. Mr. Davis and Cochran were found guilty on all three counts, and Mr. Davis was sentenced to three concurrent five year sentences, to be followed by a special parole term of ten years on Count II. The Davises appeal, asserting the following points of error: (1) the evidence was insufficient to establish venue in the Middle District of Georgia for the conspiracy count and the travel act count; (2) venue was not properly laid in the Middle District of Georgia for the possession count because the drugs never entered the Middle District of Georgia; (3) the evidence was insufficient to convict Mrs. Davis of conspiracy and possession; and (4) the evidence was insufficient to establish a business enterprise between Mr. Davis and Cochran within the meaning of 18 U.S.C. § 1952(b)(1).

During the first part of November 1979 Cochran met John Mercer, an undercover agent for the Macon-Bibb County Drug and Vice Unit. Mercer negotiated with Cochran for the purchase of a large quantity of methaqualone, or quaaludes, which Cochran indicated would be supplied by a "Florida connection." Mercer recorded

most of the personal and telephonic conversations with a body wire or a telephone recorder. After making several unsuccessful calls between November 7 and November 9, Cochran talked to his Florida connection five times between November 10 and November 13. Telephone records indicate that Cochran called the Davis residence on each of those occasions. In addition, on November 13 Mercer overheard Cochran place a person-to-person call to Mr. Davis.[1] On November 14, after the price and quantity of drugs had been agreed upon, Mercer and Cochran traveled from Georgia to the Davis residence in Winter Park, Florida. During the trip Cochran named Mr. Davis as his Florida connection. The final details of the drug transaction were discussed at the Davis home while both Mr. and Mrs. Davis were present. The conversation largely concerned where Cochran and Mercer would be staying and how they could give Mr. Davis their motel and telephone numbers without using the Davis telephone, which Mr. Davis thought was tapped. Mrs. Davis suggested relaying the information through her daughter, Sandra Yeagley. Later that day Mrs. Davis and her daughter rented the car to be used in the drug transaction. The next day Mercer, Cochran and Mr. Davis met at a Holiday Inn in Sanford, Florida. Mr. Davis told Mercer he had 26,-000 quaaludes that he brought from Miami after Cochran arrived in Florida, and an exchange of money took place. Cochran and Mr. Davis were arrested and the rented car containing the drugs was confiscated. Fingerprint comparisons showed that Mr. Davis' fingerprints were on the box containing the drugs, which were later positively identified as methaqualone.

## I. VENUE

The Davises raise two challenges to venue in this appeal. First, they assert that the district court erred in denying their motion for judgment of acquittal on the conspiracy count and travel act count because the evidence presented by the government was insufficient to establish venue in the Middle District of Georgia. Second, they assert that the district court erred in denying their motion for judgment of acquittal on the possession count because the methaqualone was never in Georgia. Venue may properly be laid in one district with respect to one count of an indictment, but still be improper with respect to the other counts. *See generally United States v. Polizzi,* 500 F.2d 856, 899 (9th Cir. 1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 802, 42 L.Ed.2d 820 (1975). In this case we conclude that venue was proper with respect to the conspiracy and travel act counts of the indictment, but not with respect to the possession count.

The right of criminal defendants to be tried in the state and district in which the crime was committed is guaranteed by article III [2] of and the sixth amendment [3] to the United States Constitution and rule 18

---

1. The government asserts that the testimony of John Mercer, as supported by the phone records and tape recordings, shows at least four contacts between Mr. Davis and Cochran while Cochran was still in Georgia. On each of these occasions Cochran told Mercer that he had spoken with his Florida connection, and phone records indicate that all four calls were to Mr. Davis in Florida. On November 10 Cochran stated that he had made contact with his connection and that the deal was set except for the price. On November 12 at 1:15 p.m. Cochran told Mercer he had just talked to his man, who wanted the money in hundred dollar bills in thousand dollar wrappers. At 11:55 p.m. on the same day Cochran told Mercer he had just talked with his man and quoted the price of the methaqualone tablets. On November 13 Cochran said he talked with his man, who agreed to reduce the quoted price on the drugs. When Mercer and Cochran were delayed by car trouble in Florida, Cochran called Mr. Davis to tell him about it. When Cochran and Mercer arrived at the Davis home, Mr. Davis' conversation indicated he had spoken to Cochran earlier about the drugs.

2. Article III, section 2, clause 3 provides that

   The trial of all crimes, except in cases of impeachment, shall be by jury; and such trial shall be held in the State where the said crimes shall have been committed . . . .

3. The sixth amendment provides that

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .

of the Federal Rules of Criminal Procedure.[4] Conspiracy, possession with intent to distribute methaqualone and traveling in interstate commerce to carry on an unlawful business enterprise involving possession with intent to distribute methaqualone are continuing offenses [5] which under 18 U.S.C. § 3237 [6] may be tried in any district in which the crime took place. *See, e.g., United States v. Cooper*, 606 F.2d 96, 97 (5th Cir. 1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 685, 62 L.Ed.2d 657 (1980) (conspiracy); *United States v. Guinn*, 454 F.2d 29, 33 (5th Cir.), *cert. denied*, 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972) (travel act); *United States v. Polizzi*, 500 F.2d at 899 (travel act); *United States v. Barnard*, 490 F.2d 907, 911–12 (9th Cir. 1973), *cert. denied*, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974) (possession). As this court has recognized, although

> the burden of proving that the crime occurred in the district of trial is squarely on the prosecution, *United States v. Luton*, 486 F.2d 1021, 1022–23 (5th Cir. 1973), *cert. denied*, 417 U.S. 920, 94 S.Ct. 2626, 41 L.Ed.2d 225 (1974), the prosecution is not required to meet the reasonable doubt standard applicable to all substantive elements of an offense. Rather, "[t]he prosecution need only show by a preponderance of the evidence that the trial is in the same district as the criminal offense... Further, there need not be direct proof of venue where circumstantial evidence in the record as a whole supports the inference that the crime was committed in the district where venue was laid." *United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480

(1979). If the Government shows by a preponderance of the evidence that the crime was committed in the trial district, both territorial jurisdiction and proper venue are established. *United States v. Luton*, 486 F.2d at 1022–23; *Cauley v. United States*, 355 F.2d 175, 176 (5th Cir.), *cert. denied*, 384 U.S. 951, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966). The question for this court, then, is whether, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the jury verdict, *United States v. Glasser*, 315 U.S. 60, 80, 62 S.Ct. 457, [469] 86 L.Ed. 680 (1942); *United States v. Wieschenberg*, 604 F.2d 326, 330 (5th Cir. 1979), the Government proved by a preponderance of the evidence that the [crimes] occurred within the Middle District of [Georgia].

*United States v. White*, 611 F.2d 531, 534–35 (5th Cir.), *cert. denied*, 446 U.S. 992, 100 S.Ct. 2978, 64 L.Ed.2d 849 (1980).

*Conspiracy*

■ The Davises assert that there is insufficient proof that either knowingly joined in a conspiracy with Cochran while he was in Georgia because the government offered no direct evidence, only inference based on Cochran's remarks to Mercer about negotiations concerning the methaqualone purchase. This argument must fail. The government is not required to offer direct evidence of venue. *United States v. White*, 611 F.2d at 534–35; *United States v. Turner*, 586 F.2d 395, 397 (5th Cir. 1978), *cert. denied*, 440 U.S. 926, 99 S.Ct. 1258, 59 L.Ed.2d 480 (1979). Here the cir-

---

4. Rule 18 provides:

> Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed.

5. A continuing offense is a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy. Where such an act or series of acts runs through several jurisdictions, the offense is committed and cognizable in each.

*United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166, 59 S.Ct. 412, 414, 83 L.Ed. 563 (1939) (quoting *Armour Packing Co. v. United States*, 153 F. 1, 5–6 (8th Cir. 1907)).

6. Section 3237(a) of Title 18 provides that

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

cumstantial evidence as a whole supports the inference that the crime was committed in the trial district. *See, e.g., United States v. Durades,* 607 F.2d 818, 820 n.1 (9th Cir. 1979); *United States v. Barnard,* 490 F.2d at 910; *United States v. Williams,* 536 F.2d 810, 812 (9th Cir.), *cert. denied,* 429 U.S. 839, 97 S.Ct. 110, 50 L.Ed.2d 106 (1976).

■ Mrs. Davis makes the additional argument that she was improperly tried in Georgia because the government did not prove that she joined the conspiracy before Cochran and Mercer arrived in Florida. We disagree. Since the prior actions of coconspirators in furtherance of the conspiracy are attributable to one who later joins the conspiracy, the conversations between Cochran and Mr. Davis and Cochran's drive through the Middle District of Georgia on his way to obtain the contraband methaqualone are attributable to Mrs. Davis. *United States v. Wilson,* 500 F.2d 715 at 727 (5th Cir. 1974), cert. denied, 420 U.S. 977, 95 S.Ct. 1403, 43 L.Ed.2d 658 (1975). The actions of Mrs. Davis' coconspirators therefore serve to establish proper venue with respect to her within the Middle District of Georgia. *See Downing v. United States,* 348 F.2d 594, 598 (5th Cir.), *cert. denied,* 382 U.S. 901, 86 S.Ct. 235, 15 L.Ed.2d 155 (1965).

*Travel Act*

■ Mr. Davis contends that there is insufficient evidence to support venue on the travel act count because neither he nor Cochran had possession of the methaqualone before Cochran crossed the state line into Florida. His argument is without merit. The government adequately met its burden of proving that Mr. Davis aided and abetted travel in interstate commerce to carry on the unlawful business enterprise of possessing with intent to distribute methaqualone by proving that, after Cochran and

Mr. Davis entered into a conspiracy to distribute methaqualone, Cochran traveled through the Middle District of Georgia to Florida with the requisite intent of obtaining the drugs from Mr. Davis. *See United States v. Guinn,* 454 F.2d at 33; *Spinelli v. United States,* 382 F.2d 871, 890 (8th Cir. 1967), *rev'd on other grounds,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

*Possession*

■ Although the Davises' contentions concerning improper venue on the conspiracy and travel act counts are meritless, the final venue challenge concerning the substantive possession count raises a serious question. The government argues, without citing any cases, that although the drugs never physically entered the territorial limits of the Middle District of Georgia the offense began there because: (1) Cochran made arrangements with Mr. Davis to purchase the drugs while Cochran was in Georgia; (2) Cochran began the process of obtaining the drugs while traveling through the Middle District of Georgia; and (3) the parties intended that the drugs be returned to that district for ultimate distribution at the street level. To adopt this argument would undermine the guarantees of article III and the sixth amendment that defendants will be tried in the state and district where the crime itself was committed. The government had the burden of proving that the conspirators had both possession of and the intent to deliver the methaqualone at the time Mercer and Cochran were in the Middle District of Georgia. *See United States v. Gomez-Tostado,* 597 F.2d 170, 173 (9th Cir. 1979). This burden was not met since neither the Davises nor Cochran actually or constructively[7] possessed the methaqualone in question until Mercer and Cochran arrived in Florida.[8] We therefore

---

7. "Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over the premises or the vehicle in which the contraband was concealed." *United States v. Salinas-Salinas,* 555 F.2d 470, 473 (5th Cir. 1977); *accord, Garza v. United States,* 385 F.2d 899, 901 (5th Cir. 1967).

8. The district court recognized that the indictment alleged the methaqualone was picked up in Miami, Florida after Mercer and Cochran arrived in Florida, and instructed the jury that the government "[did] not show the drugs were ever physically possessed in the Middle District of Georgia."

reverse the Davises' convictions under 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1).

## II. SUFFICIENCY OF THE EVIDENCE

*Conspiracy and Possession*

The Davises separately raise challenges to the sufficiency of the evidence. Mrs. Davis contends that the lower court erred in denying her motion for judgment of acquittal because the evidence was insufficient to convict her on the conspiracy and the possession counts. The failure of the government to establish venue as to the possession charge disposes of one of her contentions. The government did establish venue on the conspiracy charge, however, so the sufficiency of the evidence on that count must be examined.

The standard for assessing both direct and circumstantial evidence is whether, taking the view most favorable to the government, a reasonably minded jury must necessarily have a reasonable doubt as to a defendant's guilt. *E.g., United States v. Cardona,* 650 F.2d 54, 57 (5th Cir. 1981); *United States v. Barrera,* 547 F.2d 1250, 1255 (5th Cir. 1977). In applying this standard all reasonable inferences and credibility choices must be made in favor of the jury verdict, and that verdict must be sustained if there is substantial evidence to support it when the facts are viewed in the light most favorable to the government. *E.g., Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Cardona,* 650 F.2d at 57; *United States v. Wieschenberg,* 604 F.2d 326, 330 (5th Cir. 1979).

The essence of conspiracy under section 846 is an agreement to violate the narcotics laws. *United States v. Spradlen,* 662 F.2d 724, 726 (11th Cir. 1981). The government is not required to prove that Mrs. Davis had knowledge of all the details of the conspiracy, only that she had knowl-

edge of the essential object of the conspiracy. *United States v. Alvarez,* 625 F.2d 1196, 1198 (5th Cir. 1980) (en banc), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). While it is true that neither close association nor mere presence at the scene of the crime is sufficient to establish participation or conspiracy, *see, e.g., United States v. White,* 569 F.2d at 268; *United States v. Palacios,* 556 F.2d 1359, 1365 (5th Cir. 1977); *United States v. Martinez,* 555 F.2d 1269, 1271 (5th Cir. 1977), more is involved here. Nor can Mrs. Davis escape criminal liability on the basis that she did not join the conspiracy until after its inception or because she played only a minor role in the total scheme. *E.g., United States v. Robertson,* 659 F.2d 652, 656 (5th Cir. 1981); *United States v. Bates,* 600 F.2d 505, 509 (5th Cir. 1979); *United States v. Wilson,* 500 F.2d at 724. In this case the evidence as a whole establishes beyond a reasonable doubt that a conspiracy existed, that Mrs. Davis knew of it, and that she voluntarily participated in it.[9] *E.g., United States v. Wilson,* 657 F.2d 755, 759 (5th Cir. 1981); *United States v. Diaz,* 655 F.2d 580, 584 (5th Cir. 1981). The evidence shows that the details of the drug transaction were openly discussed at the Davis home while Mrs. Davis was present, that Mrs. Davis suggested a means for exchanging information without using the tapped Davis telephone, and that Mrs. Davis rented the car used in the drug transaction. Looking at the evidence in the light most favorable to the government, a reasonably minded jury could conclude beyond a reasonable doubt that Mrs. Davis agreed with others to violate the narcotics laws. The lower court did not err in denying her motion for judgment of acquittal.

*Travel Act*

Mr. Davis asserts that the evidence was insufficient to sustain his conviction on count III of aiding and abetting Cochran in

---

9. To prove a conspiracy the government ordinarily must prove an agreement between two or more persons to commit a crime and an overt act in furtherance of the agreement, but no showing of an overt act is required in con-

spiracy prosecutions under 21 U.S.C. § 846. *E.g., United States v. Wilson,* 657 F.2d 755, 759 (5th Cir. 1981); *United States v. White,* 569 F.2d 263, 266 (5th Cir.), *cert. denied,* 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 149 (1978).

traveling in interstate commerce to carry on an unlawful business enterprise [10] involving possession with intent to distribute methaqualone. Mr. Davis contends that the evidence, taken in the light most favorable to the government, shows only a single sporadic drug transaction that took place in Sanford, Florida, and that neither the discussions between Cochran and Mr. Davis concerning possible future deals nor Cochran's statements that he had been involved in many drug transactions in the past were proof that he had conducted other transactions.

While the main purpose of the travel act is to combat organized crime, it is not restricted to particular persons or particular types of offenses, *see, e.g., Rewis v. United States*, 401 U.S. 808, 811, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971); *United States v. Roselli*, 432 F.2d 879, 884–86 (9th Cir. 1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971), and is properly applied to Mr. Davis under the facts of this case. Section 1952 reflects congressional recognition of the difficulty of proving that a given person or business was associated with a criminal enterprise. *Id.* at 885. In this case one methaqualone transaction was proved, but the evidence as a whole showed that Mr. Davis and Cochran had for some time engaged in a continuous business relationship in illegal drug trafficking.[11]

The convictions are affirmed as to the conspiracy and travel act counts and reversed and remanded to vacate as to the possession count because of the failure of the government to prove that venue was properly laid in the trial district.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

**10.** The term "business enterprise" as it is used in section 1952 means "a continuous course of conduct, rather than sporadic casual involvement in a proscribed activity." *United States v. Cozzetti*, 441 F.2d 344, 348 (9th Cir. 1971); *accord, United States v. Zizzo*, 338 F.2d 577, 580 (7th Cir. 1964), *cert. denied*, 381 U.S. 915, 85 S.Ct. 1530, 14 L.Ed.2d 435 (1965).

**11.** The record supports the government's assertion that Cochran intended to introduce Mercer to a connection he could use on a regular basis. Mr. Davis' discussion of the transaction in this case also revealed he was intimately familiar with drug trafficking.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.