**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oscar CUNI, Defendant-Appellant.**

**No. 81–6053
Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Oct. 25, 1982.

Geoffrey C. Fleck, Weiner, Robbins, Tunkey & Ross, Miami, Fla., for defendant-appellant.

David L. McGee, Tallahassee, Fla., for plaintiff-appellee.

Before TJOFLAT, JOHNSON and HATCHETT, Circuit Judges.

PER CURIAM:

Oscar Cuni appeals his criminal conviction in the United States District Court for the Northern District of Florida. Appellant Cuni was charged in a three count indictment that named Manuel Gonzalez, Luis Cervantes, Augustin Rivero, Julian Bobiak, Richard Vaughn and Alex Chirino as co-defendants. Count I charged the defendants (except Vaughn) with conspiracy to possess, with intent to distribute, more than 1,000 pounds of marijuana, in violation of 21 U.S.C.A. §§ 846 and 841. Count II charged Cuni, Gonzalez, Vaughn, Cervantes and Rivero with intent to distribute more than 1,000 pounds of marijuana in violation of 21 U.S.C.A. §§ 846 and 841. Count III charged Cuni and the same co-defendants as in Count II with attempting to import marijuana in violation of 21 U.S.C.A. §§ 952 and 963.

Rivero, Vaughn and Chirino were severed before trial; Cervantes was severed at the close of the government's case, and Bobiak and Gonzales failed to appear and were tried in absentia. Cuni, Gonzalez and Bobiak were found guilty by a jury on all counts.

Cuni presents two issues in this appeal: first, whether the trial court erred in failing to grant his motions for judgment of acquittal for the reason that the evidence was insufficient as a matter of law to sustain conviction on the charges for either conspiring or attempting to possess marijuana with intent to distribute; second, whether the trial court erred in precluding the defendant from arguing to the jury and in failing to charge the jury on the inference of innocence to be drawn from Cuni's absence of flight after arrest and before trial.

In the latter part of 1980 and continuing until the early part of 1981 the government was involved in a narcotics investigation which came to be known as "Operation Grouper". Numerous DEA agents and other officers worked undercover posing as marijuana off-loaders who transported loads of marijuana from mother vessels at sea to secure locations, known as "holes", within the United States. Several meetings ensued between the agents and some of the defendants. In early March 1980, several of the agents met with some of the defendants, not including Cuni, and discussed the

importation of 40,000 pounds of marijuana. A second meeting was held in April 1980 to again discuss the 40,000 pound load, but a dispute ensued between Gonzalez and Rivero that resulted in the plan's being abandoned. Later in October 1980, the agents met again with Gonzalez and Rivero at which time Gonzalez agreed to pay 1.6 million dollars to the agents to meet the mother ship out in the Gulf of Mexico or the Atlantic or wherever and unload it and bring it in. The parties discussed locations where the load could be brought, including Panama City, the St. Marks River, and Brunswick, Georgia. Gonzalez indicated the marijuana was coming from Colombia and that it would arrive in approximately a week. Another meeting ensued in November 1980 in Panama City, Florida. The purpose of this meeting was to do the groundwork for the alleged "off-load." Cuni was present for the Panama City meeting which lasted over a period of several days. At one point during the Panama City meeting, Gonzalez supplied radio sets and Cuni and others worked trying to get them installed and operating. Cuni explained to the agents the various code names for the vessels that were to be used. Also discussed were personal representatives that were on the mother ship. On November 4, 1980, still in Panama City, Cuni made contact in Spanish with the mother ship. The others were advised by Cuni that the mother ship was on location at the rendezvous point near the Yucatan peninsula. The vessel was reported to be a blue and white steel hull fishing vessel that had 60,000 pounds of marijuana on board. Half of the load was to be dropped off to a different smuggling group. On the afternoon of November 6, 1980, Cuni reported that he had received a message from a Puerto Rican whom he personally knew on the pick-up vessel. The Puerto Rican reportedly said that there was a problem with the Coast Guard or Mexican authorities. It was also reported that the mother ship was going to the rendezvous point of 88 degrees west and 23 degrees north latitude. On November 7, 1980, the vessel LEBRE was seized by the United States Coast Guard 13 miles from 88 degrees west, 23 degrees north. The LEBRE is a 65-foot, blue and white steel hull fishing vessel. The crew had Colombian identification cards and the vessel contained 857 bales of marijuana weighing approximately 60,000 pounds.

On November 14, 1980, a meeting was held in the DEA's Miami undercover apartment. Several agents met along with Gonzalez and Cuni. At this meeting Cuni gave the agents a "present"—a small quantity of marijuana intended for their personal use. On February 13, 1981, another meeting of Gonzalez, Cuni and several of the agents took place at the undercover apartment. At this meeting Gonzalez said he had a new 30,000 pound load coming and he wanted the agents to off-load it. However, he advised that the off-load would have to be on the Atlantic side because he had lost three loads in the Gulf. At this meeting Cuni advised that his "mother ship ain't going to come north of Yucatan."

█ In reviewing criminal convictions for the sufficiency of the evidence, the standard of review is whether "a reasonably minded jury must necessarily entertain a reasonable doubt of the defendant's guilt." *United States v. Rodriguez,* 654 F.2d 315, 317 (5th Cir. 1981); *United States v. Miller,* 664 F.2d 826, 828 (11th Cir. 1981); *United States v. Bulman,* 667 F.2d 1374, 1377 (11th Cir. 1982). The evidence including all reasonable inferences therefrom is to be viewed in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *Bulman, supra.*

Appellant strenuously argues his sufficiency of the evidence issue as it relates to Counts I and II of the indictment. The thrust of this argument is that Cuni had no complicity, interest, or participation whatsoever in the disposition of the marijuana involved after it was brought to the United States. Cuni admits that the evidence sup-

**1356**

ports his involvement in the attempted importation of the marijuana involved but, as stated, contends that the government completely failed to establish his guilt of either conspiring or attempting to possess that marijuana with intent to distribute.

In order to prove a conspiracy under 21 U.S.C.A. § 846 "the government must prove, by direct or circumstantial evidence, that there was an agreement among the defendants to achieve an illegal purpose." *United States v. Watson,* 669 F.2d 1374, 1379 (11th Cir. 1982). The government is not required to prove that each co-conspirator participated at every stage of the conspiracy. *Id.* Furthermore, the government is not required to prove any overt act in furtherance of the conspiracy. *United States v. Davis,* 666 F.2d 195, 201 n.9 (5th Cir. 1982). Proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy. *Id.* at 201. Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement. *United States v. Nickerson,* 669 F.2d 1016, 1022 (11th Cir. 1982). And finally, whether the object of the conspiracy is achieved is immaterial to the commission of the crime of conspiracy. *United States v. Tombrello,* 666 F.2d 485, 489 (11th Cir. 1982).

In this case the government fully established Cuni's knowledge of and voluntary participation in a conspiracy to import thousands of pounds of marijuana into the United States. The conspiracy had as its object the sale and distribution of this marijuana in the United States. The evidence in this case was overwhelming that Cuni knew of and voluntarily participated in the general conspiratorial agreement and contemplated the importation, possession and distribution of thousands of pounds of marijuana. Appellant's argument that "mere attempted importation" is insufficient to sustain a conviction for conspiracy to possess with intent to distribute is completely

without merit. It is well settled that intent to distribute a controlled substance under 21 U.S.C.A. § 841 may be reasonably inferred from the quantity of the contraband. *United States v. Bulman, supra,* 667 F.2d at 1378–1379.

As stated, the second issue Cuni presents is that the district court erred in refusing to allow his counsel to comment on the absence of co-defendants Gonzalez and Bobiak and erred in failing to charge the jury that an inference of innocence could be drawn by Cuni's appearing for trial. Counsel for the defense advised the trial judge that he wanted to suggest to the jury that the absence of those co-defendants permitted an inference of innocence on the part of Cuni who was present. The government wanted to argue to the jury that flight to avoid prosecution would support an inference of guilty knowledge. The district judge refused to allow either argument. We do not find the dictum of the District of Columbia Circuit in *United States v. Telfaire,* 469 F.2d 552, 557 (1972)—the case upon which appellant relies—persuasive. In this instance the trial court determined that such an argument or a charge to the jury that they could favorably infer from the absence of flight was not relevant. The trial court has broad discretion in ruling on questions of relevancy and such rulings will not be disturbed absent a clear abuse of that discretion. *United States v. Colson,* 662 F.2d 1389, 1392 (11th Cir. 1981). Here we find no abuse of discretion. The fact that co-defendants Gonzalez and Bobiak had fled to avoid prosecution did not tend to exculpate Cuni. The fact that Cuni appeared for trial will not justify the inference of innocence.

Finding no error, the judgment of the district court as to all three counts is AFFIRMED.