**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Frank RUSSELL, Eugene Van Aernam, John L. Dixon and Jack Murphy, Defendants-Appellants.**

No. 82–5086.

United States Court of Appeals, Eleventh Circuit.

April 25, 1983.

Rehearing and Rehearing En Banc Denied June 9, 1983.

Stephen A. Kermish, Atlanta, Ga., for Van Aernam.

Larry G. Turner, Gainesville, Fla., Robert S. Griscti, Tampa, Fla., for Dixon & Murphy.

H.S. Henderson, III, Mitchell & Henderson, Joe M. Mitchell, Jr., Melbourne, Fla., for Frank Russell.

David L. McGee, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before RONEY and HILL, Circuit Judges, and MORGAN, Senior Circuit Judge.

JAMES C. HILL, Circuit Judge:

Each of the four defendants in this action was charged with two counts of criminal conduct; (1) conspiracy to possess approximately 25,000 pounds of marijuana with the intent to distribute and (2) conspiracy to import that controlled substance into the United States. The government employed Jesus Perez, an experienced drug smuggler, to pose as a smuggler seeking local officials' protection and other services for unloading marijuana in Dixie and Taylor counties in Florida. Perez first contacted George Howard. (Howard eventually entered into a plea agreement in return for his testimony.)

Perez told Howard that he wanted to bring a load of marijuana into the Dixie-Taylor county area and that he wanted official protection for the scheme. Howard agreed to contact others about obtaining protection, to act as a contact man in the area, to set up off-loaders, and to arrange for off-load sites. Howard contacted John L. Dixon to obtain protection from the sheriff of Taylor county, Grady Murphy. Dixon and the sheriff's nephew, Jack Murphy, agreed to obtain this protection for $75,000. Howard arranged a meeting between Dixon, Murphy, Perez, and himself which was tape recorded by Florida agent Ronnie Cornelius. At the meeting, the parties discussed, and agreed to undertake to provide, protection, off-loading sites, and the advantages of using a particular "water" crew for the unloading. Dixon later met with Howard and showed him several off-load sites and the boats that would be used.

Subsequent to a meeting on April 29 between Dixon, Perez, Howard, and DEA agent George Villar, Howard began to doubt that Dixon and Murphy could or would produce the required protection. In view of these doubts and of a dispute between the Dixon-Murphy off-load crew and another off-load crew, Howard began to look for protection from other sources. Howard contacted Frank Russell, an official of Dixie County, who claimed that he had off-load sites, a crew, four deputy sheriffs, and a jailor who would aid the smuggling effort. Howard also met with Gene Van Aernam who offered to provide an off-load site and the services of the chief deputy of Dixie county and a jailor in protecting the enterprise. Van Aernam met with Howard and Perez on May 12, 1981. In that conversation the parties discussed, and undertook to provide, off-load sites, off-loaders, and protection. Howard also told Van Aernam about his difficulties with the Dixon-Murphy group, mentioning Jack Murphy by name. The government also recorded a meeting between Howard, Perez, Van Aernam, and Russell held on June 2, 1981 where they discussed crews, sites, boats, and the availability of protection for the 25,000 pound load Perez said was available.

The jury convicted each of the defendants on both counts after a trial involving all four defendants. Each of the defendants has filed a separate brief in this appeal. Finding no merit in any of the appellants' contentions, we affirm.

## I.

All four appellants challenge the joinder of defendants for trial. They emphasize that the Dixon-Murphy group never met with the Russell-Van Aernam group and argue that the government's investigation shifted from Taylor to Dixie county after May 4. The appellants raise three basic issues: whether the joinder was permissible under Fed.R.Crim.P. 8, whether the joinder was permissible under Fed.R.Crim.P. 14, and whether an alleged evidentiary variance between the government's charge of a single conspiracy and its alleged proof of multiple conspiracies tainted the convictions.

■ Rule 8(b) allows joinder of two or more defendants if "they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Misjoinder under Rule 8(b) is prejudicial per se and would require a new trial. *United States v. Kabbaby,* 672 F.2d 857, 860 (11th Cir.1982). The government must show that the initial joinder is appropriate under Rule 8(b). *United States v. Whitehead,* 539 F.2d 1023, 1025 (4th Cir.1976).

■ In order to determine whether the joinder is sound under Rule 8(b) we examine the face of the indictment. If the indictment's allegations, taken as true, establish a single conspiracy, we must conclude that the initial joinder was proper. *United States v. Levine,* 546 F.2d 658, 663 (5th Cir.1977). We conclude that each of the defendants agreed to participate in a common enterprise—the smuggling of a load of Perez's marijuana from Colombia to the Taylor-Dixie county area. Howard, who was *not* employed by the government as an informer, began the search for sources to help in the smuggling attempt. The imaginary nature of the marijuana load in this case enhances an image of separateness but does not compel us to conclude that the joinder was improper. The existence of a conspiracy does not depend on each conspirator's participation in every phase of the criminal venture. *Blumenthal v. United States,* 332 U.S. 539, 68 S.Ct. 248, 92 L.Ed. 154 (1947). Each conspirator need not know of the identity and role of each of his co-conspirators. *Id.*

> The unity essential to a conspiracy is derived from the assent of its members to contribute to a common enterprise. Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership.

*United States v. Grassi,* 616 F.2d 1295, 1303 (5th Cir.), *cert. denied,* 449 U.S. 956, 101 S.Ct. 363, 66 L.Ed.2d 220 (1980). By alleging that each of the conspirators participated in a scheme to import a single 25,000 pound load of marijuana, the indictment satisfies the requirements of Rule 8(b).

■ The appellants also argue that the joinder violated Fed.R.Crim.P. 14. This rule proscribes prejudicial joinder but leaves the decision regarding prejudice to the discretion of the trial judge. *United States v. McLaurin,* 557 F.2d 1064, 1074–75 (5th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978). Appellants must show that they "received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *United States v. Berkowitz,* 662 F.2d 1127, 1132 (5th Cir. Unit B 1981). Dixon argues that the compelling prejudice consisted of antagonistic and mutually exclusive defenses and of danger from evidentiary spillover from the government's repeated references to the public corruption involved with the Russell-Van Aernam segment of the conspiracy. A careful review of the record indicates that appellants have failed to show compelling prejudice, *see United States v. Zicree,* 605 F.2d 1381, 1388–89 (5th Cir.1979), *cert. denied,* 445 U.S. 966, 100 S.Ct. 1656, 64 L.Ed.2d 242 (1980), and that the trial judge

acted within his discretion in refusing to grant a severance on the Rule 14 motions. *See United States v. Grimm,* 568 F.2d 1136 (5th Cir.1978).

■ Dixon argues that the government's evidence proved multiple conspiracies, not the single conspiracy charged in the indictment. This proof, in Dixon's view, constitutes a fatal variance from the offense charged in the indictment. The appellant must show that the variance affected his substantial rights. *United States v. Sutherland,* 656 F.2d 1181, 1190 n. 6 (5th Cir. 1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663, *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). We conclude that the trial judge correctly allowed the jury, under proper instruction, to determine whether one or more conspiracies existed. *United States v. Michel,* 588 F.2d 986, 995 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979) ("Whether a scheme is one conspiracy or several is primarily a question for the jury"); *United States v. Rodriguez,* 509 F.2d 1342, 1348 (5th Cir.1975).

## II.

■ Russell and Dixon argue that the trial court erred in permitting Cornelius to testify concerning the intentions of the various appellants and to interpret what they had said on the tapes. The appellants contend that Cornelius' testimony invaded the province of the jury by offering opinion evidence based on the tape recordings which were themselves admitted into evidence. They also argue that Cornelius' testimony that the defendants had engaged in a single conspiracy constituted an opinion of a non-expert witness. We disagree.

Cornelius described conversations he had overheard between the defendants and Perez. Cornelius testified that there was a single plan that was discussed during the course of these meetings with each one of these persons. He further stated that during the conversations, he had overheard each of the defendants agree to perform certain specific tasks. We conclude that Cornelius' testimony did not constitute

opinion evidence; rather, the agent testified regarding the plan which Perez sought to implement and to authenticate the tape recordings. The district court did not err in admitting this description of facts as perceived by Cornelius.

## III.

■ Van Aernam argues that the prosecutor made improper comments during his closing argument and rebuttal. In support of this position, Van Aernam points to comments by the prosecutor in which he states that the inconsistencies in the evidence indicate that certain witnesses lied. Having failed to object to the prosecution's argument at trial, defendant can succeed only if the remarks were so prejudicial that they constituted plain or fundamental error. *Kruglak v. Purdy,* 578 F.2d 574, 575 (5th Cir.1978); *United States v. Blakely,* 491 F.2d 120, 122 n. 2 (5th Cir.1974). Plain error consists of error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings. *United States v. Fowler,* 605 F.2d 181, 184 (5th Cir.1979), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1599, 63 L.Ed.2d 785 (1980).

■ A close examination of the prosecutor's closing argument reveals that Van Aernam's contention lacks merit. A prosecutor may not impugn the credibility of witnesses by hinting at evidence outside the record, by stating his belief as if he was telling the truth, or by stating that the hard work of the police had been successful. *See United States v. Weinrich,* 586 F.2d 481, 497 (5th Cir.1978), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979). A prosecutor does not commit error in attacking witness credibility on the basis of inconsistencies between his testimony and other evidence. *See United States v. Morris,* 568 F.2d 396, 398, 400–02 (5th Cir.1978). All of the prosecutor's remarks cited by the appellant constitute fair comment on the evidence in the record and do not approach the standard of plain error.

## IV.

Russell argues that the trial court abused its discretion in excluding testimony from defense witnesses Peter Thurman and Jesse Brunnell and in limiting Alfred Dowdell's testimony in appellant's efforts to impeach the credibility of government witness Jerry Harrison.

■ Determinations of admissibility of evidence rest largely within the discretion of the trial judge and will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Gorel,* 622 F.2d 100, 105 (5th Cir.1979); *United States v. Grimm,* 568 F.2d 1136, 1138 (5th Cir.1978).

■ Russell contends that the proffered testimony was to the effect that he had discussed performing undercover work as a government agent. In her proffered testimony, Brunnell stated that Russell had provided government agents with information in solving a homicide. Even if this testimony impeached Harrison's testimony, the trial judge acted within his discretion in excluding Brunnell's testimony as relating to a collateral matter. Fed.R.Evid. 608(b). The trial judge also acted within his discretion in excluding Dowdell's testimony by which Russell sought to introduce evidence of specific, though unrelated, good acts of Russell to prove that "he was a good county commissioner." "Evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Grimm,* 568 F.2d at 1138. Finally, the trial judge did not abuse his discretion in determining that Thurman's testimony was irrelevant. The proffered testimony that Special Agent Harrison had asked Thurman to wear a microphone to a proposed meeting with Russell clearly did not relate either directly to an issue in the case or to impeaching Harrison's credibility.

## V.

■ Each of the appellants challenge the sufficiency of the evidence relating to various aspects of the charges. In reviewing these contentions, we must make all reasonable inferences in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Russell argues that the government failed to prove that the marijuana which Russell planned to off-load was to come from outside the United States. This contention clearly lacks merit. In the June 2 tape, Russell and his co-conspirators discussed the plan to bring approximately 25,000 pounds of marijuana to the Gulf coast of Florida at Taylor county. They discussed off-loading the marijuana by boats and referred to the marijuana as coming from "over there." It takes fifteen days to get "over there" by boat and seven to eight days to get back. Russell also suggests that in off-loading, the boat need not "be any closer than 60 miles out. . . ."

■ Van Aernam argues that the government failed to prove that he intended to distribute the marijuana. The government must show both general criminal intent and the specific intent to distribute. *United States v. Pope,* 561 F.2d 663, 670 (6th Cir.1977). The tape recordings of May 12 and June 2 clearly evidence Van Aernam's involvement in the planning of delivery of 25,000 pounds to Perez. The jury could infer the intent to distribute from the quantity of contraband. *United States v. Cuni,* 689 F.2d 1353 (11th Cir. 1982); *United States v. Bulman,* 667 F.2d 1374, 1378–79 (11th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982).

■ Van Aernam contends that notwithstanding his active participation in the importation phase of the conspiracy, the government did not prove that "he had any knowledge of the operation other than importation. . . ." Van Aernam's Brief at 10. This argument misperceives the nature of the government's burden and cannot succeed. The government proved beyond a reasonable doubt that Van Aernam knew of, and voluntarily participated in, the general conspiratorial agreement that contemplated the importation and distribution of a large quantity of marijuana. The govern-

ment need not prove Van Aernam's participation in every phase of the conspiracy, *United States v. Nickerson,* 669 F.2d 1016, 1022 (5th Cir. Unit B 1982). Every member of the conspiracy need not be an active participant in every phase of the conspiracy so long as he is a party to the general conspiratorial agreement. *United States v. Cuni,* 689 F.2d at 1356. The government sufficiently proves knowledge by proving that the defendant knew the essential object of the conspiracy, in this case the successful importation of Perez's marijuana. *Id.* By proving appellant's involvement in the importation scheme, the government has satisfied its burden.

■ Dixon and Murphy argue that the government has failed to prove that they intended to join the conspiracy and has shown only that they intended to steal Perez's and Howard's money. The evidence taken in the light most favorable to the government, *Glasser v. United States,* 315 U.S. at 80, 62 S.Ct. at 469, indicates that Dixon agreed to do far more than bribe law enforcement officers. He agreed to provide the off-load site, the off-loaders, and the boats to haul the marijuana from the big boat back to shore. He also agreed to be present at the off-load site himself.

Similarly, the government presented sufficient evidence against Jack Murphy to convict him of the charged conspiracies. When he agreed to participate with Howard in the planned smuggling venture, Dixon stated that he was bringing Jack Murphy into the plan. Dixon and Murphy came together to a meeting with Perez and Howard on April 14 in Tallahassee where the participants discussed the details of the smuggling operation. Jack Murphy discussed the bribery of the sheriff, indicated that he and Dixon had arranged for such a bribe, and warned Perez and Howard to stay away from a man named Frank who Murphy said was cooperating with law en-

forcement. After the meeting disbanded, Murphy drove Dixon and Howard back to Perry, Florida. During the trip, they discussed "in general about bringing the load in and where we would go and do it." Viewed in the light most favorable to the government, the evidence against Murphy was clearly sufficient.[1]

## VI.

■ Van Aernam has raised two issues with respect to the sufficiency and accuracy of the trial judge's instructions to the jury. First, Van Aernam complains that the district judge failed to instruct on " 'intent to distribute,' an essential element of the offense...." The transcript indicates that the instruction was given. Volume 26 at 193. Second, Van Aernam argues that the trial judge erred in failing to instruct the jury that the government must prove an overt act in furtherance of the alleged conspiracies. The government, however, need not prove an overt act in a drug conspiracy case. *United States v. Davis,* 666 F.2d 195, 201 n. 9 (5th Cir. Unit B 1982); *United States v. Lee,* 622 F.2d 787, 790 (5th Cir. 1980), *cert. denied,* 451 U.S. 913, 101 S.Ct. 1987, 68 L.Ed.2d 303 (1981).

## VII.

Van Aernam argues that the trial court improperly made its *James* determination by examining the transcript of the recorded conversations rather than admissible evidence. In *United States v. James,* 590 F.2d 575, 580–81 (5th Cir.) (*en banc*), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), the court held that without substantial evidence independent of the statement to be introduced showing the existence of a conspiracy to which the appellant belonged, Fed.R.Evid. 801(d)(2)(E) would not apply and the statement of a co-conspirator would be inadmissible. The court held

1. Murphy also argues that he was tried for crimes other than those charged in the indictment. Specifically, he claims that though he was indicted for conspiracy to import and to possess marijuana, he was tried for conspiracy to bribe a sheriff. This argument is clearly frivolous. The government proved Murphy's knowledge of the conspiracy and his participation in agreeing to perform a task important to the conspiracy's success—the bribery of law enforcement officers.

that Fed.R.Evid. 104(a) requires the trial judge alone to determine the admissibility of the conspirator's statement. *Id.* at 579–80.

 We hold that the trial judge did not err in determining the admissibility of the co-conspirators' statements based on a reading of the tape transcripts. In *United States v. Miller,* 664 F.2d 826, 827–28 (11th Cir.1981), the court emphasized that the *James* holding did not require the trial judge to follow a specific procedure in determining the admissibility of the statements. The transcripts provide substantial evidence that Van Aernam was a member of the conspiracy and that the declarations were made in furtherance of the conspiracy. *See United States v. Kopituk,* 690 F.2d 1289, 1324 (11th Cir.1982) (standard of proof governing the admissibility of the declarations in a *James* context is one of substantiality).

Similarly, Murphy argues that his statements and those of his co-conspirators were inadmissible because there was no independent evidence of the conspiracy. The record reveals adequate evidence of conspiracy without consulting what would otherwise have been hearsay.

Murphy attempts to construct another argument about the overheard and often taped conversations of the conspirators. His premise is that the statements then made amount to admissions or confessions and should not have been admitted without corroboration. *See generally, Wong Sun v. United States,* 371 U.S. 471, 488–89, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963). The short answer is that his premise is incorrect. Those statements were not admissions of *having committed* a crime; the conspiratorial conversations were the commission of the crime, itself. Eye-witness, overheard, and taped proof of the commission of the crime of conspiracy is admissible.

## Conclusion

Having concluded that none of the contentions raised by the appellants contain merit, we affirm the convictions on all counts charged.

AFFIRMED.