[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 30, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-14354

_____

D.C. Docket No. 07-80051-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JULIEN GARCON,
a.k.a. Johnathan Imgramham,
a.k.a. Julian Garcon,
a.k.a. Tedric Sherman,

Defendant–Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 30, 2009)

Before BARKETT and HULL, Circuit Judges, and SCHLESINGER,* District
Judge.

_____

* Honorable Harvey E. Schlesinger, United States District Court for the Middle District
of Florida, sitting by designation.

PER CURIAM:

Julien Garcon appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g).  Garcon urges this Court to vacate his 120-month sentence and remand his case for a new trial because: (1) the evidence gathered from both an apartment he was occupying, and a photographic array that identified him, should have been suppressed; (2) the expert testimony introduced by the government regarding DNA sampling biased the jury's decision-making; and (3) the evidence presented against him was insufficient to find him guilty beyond a reasonable doubt.  After careful review of these arguments, we affirm Garcon's § 922(g) conviction.

The relevant facts of Garcon's story begin when a female acquaintance of his, Shari Morant, entered into a one-year apartment lease with the Royal St. George Apartments in West Palm Beach, Florida.  That lease was set to run from April 1, 2005, to March 31, 2006.  After commencing the lease by faxing the relevant documents to the leasing office, Morant requested that the keys for her new apartment be released to her "brother."  Nicole Stevens, an employee of the leasing company, agreed to this and released the apartment keys to a black male that arrived on Morant's behalf.  Throughout the subsequent months, this same

man regularly entered the leasing office to pay the monthly rent. In fact, Stevens, who lived on the premises herself, saw this man on the property so often that she called Morant to confirm whether the man was an unregistered occupant of her apartment. Morant denied that the man resided with her.

On November 8, 2005, Morant faxed Stevens a 30-day written notice to vacate her apartment on December 8, 2005, and transfer her existing lease to an affiliated property in Sanford, Florida. Stevens did not subsequently hear from Morant. On December 12, 2005, an apartment maintenance crew attempted to enter Morant's apartment to determine its status before re-renting. They were unable to enter as the apartment locks had been changed. Upon receiving this news, Stevens unsuccessfully attempted to get in contact with Morant. Stevens then ordered the maintenance workers to drill out the locks.

After entering the apartment, Stevens observed a handgun in a shoe box near the front door. She also observed a scale in the pantry, razor blades, and a clear sandwich baggie containing a white powdery substance in the kitchen area. Stevens then contacted the West Palm Beach Police Department ("WPBPD"). Law enforcement officers arrived, and Stevens took them into the apartment where the officers also observed the items inside. After obtaining a search warrant, the WPBPD located the following in the apartment: extensive drug paraphernalia for

the making of both powder and crack cocaine; approximately 175.1 grams of cocaine hydrochloride; 40.22 grams of cocaine base; a 9 millimeter handgun; a 12-gauge shotgun; a .40 caliber semi-automatic firearm; $48,865 in U.S. currency; a Miami Auto Auctions identification card in the name of Julien Garcon; a second identification card bearing a photo of the same man, though with the name Jonathan Imgramham; a used condom; and a piece of chewed gum.

Garcon's DNA matched the samples collected from the condom and the gum. DNA found on the semi-automatic firearm matched Garcon's to a probability of one in 1.3 million persons, despite the firearm containing the DNA of at least three people. Stevens did not identify Garcon in the first photographic lineup she was presented with. However, when presented with a second photographic array, she did in fact correctly identify him.

Following his arrest, Garcon sought to suppress all of the evidence seized pursuant to the search warrant, based on a lack of probable cause. He also sought to suppress Stevens' eyewitness identification, based on law enforcement's "unduly suggestive" tactic of presenting two separate photographic arrays to her in which Garcon was the only individual included in both. The district court granted Garcon's motion to suppress evidence in part, and denied it in part. After a jury trial, Garcon was acquitted of three counts, each pertaining to cocaine possession.

4

He was convicted of the fourth count, of being a felon in possession of a firearm. This appeal followed. We have reviewed Garcon's arguments as presented in his brief and find no reversible error.

There is no evidence in support of Garcon's claim that Stevens was acting as an agent of the government. Stevens ordered the maintenance workers to drill out the locks after having received a written notice from Morant indicating that the apartment would be vacated on December 5, 2008. With respect to any claim of illegal entry of the apartment, we note that Stevens is a private individual who acted independently of law enforcement in entering the apartment, and that the leasing agreement is irrelevant because Garcon was a non-resident. Thus, the Fourth Amendment is not at issue here with respect to either Stevens' initial entry into the apartment or her second entry where she escorted the officers into the apartment.[1]

We find no evidence to support Garcon's claim that Stevens' eyewitness identification of him was unduly suggestive. Stevens had seen Garcon around the property on multiple occasions. She had seen him in the leasing office when he paid the monthly rent. She was presented with two separate photographic arrays, each containing six photos. Her identification of Garcon in the second of these

---

[1]There is an issue as to Garcon's standing to raise a Fourth Amendment claim. The district court only assumed, but did not decide, that Garcon had standing. We do likewise.

5

was sound.

We additionally find that the government-introduced expert testimony regarding Garcon's DNA on the semi-automatic firearm was not prejudicial, and the district court did not abuse its discretion by permitting it. See United States v. Russell, 703 F.2d 1243, 1249 (11th Cir. 1983). Garcon does not dispute the fact that his DNA was found on the semi-automatic firearm, only that the introduction of this evidence was improper in light of the fact that his DNA was not the only match found on the firearm. We find no merit in this argument.

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, as well as the Supreme Court's holding in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), which collectively require that expert testimony be both reliable and relevant. Id. at 589-92. The district court allowed the presentation of two demonstrative aids that illustrated how Garcon's DNA could not be excluded as a contributory source of DNA found on the firearm. We find no error in the district court's decision to allow the admission of these aids.

Lastly, Garcon argues that the evidence presented against him was insufficient to find him guilty beyond a reasonable doubt. The elements of the crime of being a felon in possession of a firearm require the government to prove beyond a reasonable doubt that the defendant "was a convicted felon, that he

6

possessed a firearm in or affecting interstate commerce, and that he knew he possessed the firearm." United States v. Sweeting, 933 F.2d 962, 965 (11th Cir. 1991). The government has satisfied each of these elements.

As noted above, Garcon was frequently spotted in the apartment complex, putting him in the general vicinity of the firearm. Furthermore, several of Garcon's personal effects, including clothing, two separate identification cards, and a condom containing his DNA, were found in the apartment. Garcon's DNA was also found on the semi-automatic firearm itself. Taken together, this evidence supports the jury's finding that Garcon did in fact possess the firearm. This finding of possession, considered along with Stevens' eyewitness identification of Garcon in the second photographic array, constitutes evidence sufficient to support a conviction.

AFFIRMED.