UNITED STATES of America, Plaintiff-Appellee,

v.

Jose Manuel SUAREZ and Leites Rufino Chiong, Defendants-Appellants.

No. 73-1590.

United States Court of Appeals, Fifth Circuit.

Nov. 14, 1973.

Certiorari Denied March 18, 1974. See 94 S.Ct. 1572.

Lawrence R. Metsch, Miami, Fla., court-appointed, for Suarez.

Albert L. Carricarte, Miguel A. Suarez, Miami, Fla., for defendants-appellants.

Robert W. Rust, U. S. Atty., Carol M. Anderson, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

COLEMAN, Circuit Judge:

After trial on a multicount indictment against several defendants a jury convicted Jose Manuel Suarez of possessing with intent to distribute, and of distributing, 124 grams of cocaine (two counts) on July 31, 1972, 21 U.S.C., § 841(a)(1); 18 U.S.C., § 2(b).

In the same trial, and on separate counts in the same indictment, Leites Rufino Chiong was convicted of possession with intent to distribute, and of distributing, 126 grams of heroin on September 6, 1972, in violation of the same statutes.

The conviction of Suarez will be affirmed.

Because the evidence was clearly insufficient to support the conviction of Chiong, his conviction will be reversed.

## THE SUAREZ APPEAL

As to Suarez, considering that he was specifically indicted for aiding and abetting the commission of the alleged offense, 18 U.S.C., § 2(b), the guilty verdict is amply supported by the evidence.

He says, however, that he was made the victim of reversible error when the trial judge allowed a government "evidence custodian" to take the witness stand a second time for the purpose of correcting an error in his original testimony as to the date he received the cocaine from the narcotics agent who had purchased it from Suarez's confederate. This custodian first said he received the cocaine on August 9. As between the purchasing agent and the analyzing chemist this would have left an eight day gap in the chain of custody. In his second appearance, the witness said he received the material on August 1 and that his prior testimony was an inadvertent mistake.

Appointed appellate counsel for Suarez has filed a painstakingly thorough brief and has urged on oral argument that the correction of this mix-up dictates a reversal because it was done in contravention of the customary rule for the sequestration of witnesses.

It is undoubtedly correct that the custodian had been put under the rule and after giving his testimony had returned to his office. He was afterwards told by other agents that there had been an error in his first testimony. Subsequently, he was returned to the stand, over objection, for the purpose of making a correction.

This does not, in our opinion, provide good cause for reversal.

In the first place, the record contained undisputed testimony that a field test of the substance in question identified it as cocaine. Moreover, the card which bore entries as to dates of receipts and which

had been admitted in evidence was filed in this Court as a part of the trial record. That card contained a written notation that the custodian received the material on August 1. This appears immediately adjacent to a line showing, for another purpose, the date of August 9, lending credence to the custodian's explanation that his use of the latter date in his first testimony was an unintentional mistake. Then, too, there was no dispute about the custodian having received the substance; the only thing involved was the ascertainment of the correct date.

■■ As we have said on other occasions, this was too small a pebble to justify a holding that the trial judge abused his discretion in declining to allow it to overturn the trial. Failure of a witness to comply with the sequestration rule does not of itself render his testimony inadmissible, although it may affect the weight of the testimony; whether such a witness is to be permitted to testify is generally left to the sound discretion of the trial court, United States v. Picard, 1 Cir., 1972, 464 F. 2d 215; Braswell v. Wainwright, 5 Cir., 1972, 463 F.2d 1148, quoting Holder v. United States, 150 U.S. 91, 14 S.Ct. 10, 37 L.Ed. 1010 (1893). The order of the custodian's appearance is of no fatal significance. Although that is not what happened in this case, the trial court in the exercise of its sound discretion may allow the proof to be reopened for further testimony before the case goes to the jury, even after both sides have rested, United States v. Batie, 5 Cir., 1972, 457 F.2d 927.

### THE CHIONG APPEAL

We measure Chiong's case by the evidence submitted to the jury, weighing it in the light most favorable to the verdict, Sanders v. United States, 5 Cir., 1969, 416 F.2d 194; United States v. Warner, 5 Cir., 1971, 441 F.2d 821.

By the terms of the indictment, which did not carry a conspiracy count, the government had the burden of presenting evidence enough to support jury belief beyond a reasonable doubt that on September 6, 1972, Chiong, personally or as an aider and abetter, had heroin in his possession, that the possession was with an intent to distribute it (under one count) or that he did, in fact, distribute it (the other count).

The entire scenario took place in Maimi at the home of one Eduardo Chambless, a known narcotics violator, who was jointly indicted with Chiong and who entered a plea of guilty during the course of the trial. We may note at this point that Chambless took the witness stand and testified to the innocence of Chiong, but that has nothing to do with the result because the jury was free to reject his testimony, as evidently it did.

Jaime Forteza had been a special agent for the Bureau of Narcotics and Dangerous Drugs for a year and a half.

At 12:45 p. m., September 6, 1972, Forteza went to Chambless' house. Chiong was there, talking to Chambless in a bedroom. Chiong left. He had no conversation with Forteza. Chambless told Forteza to come back at 3 o'clock and he would have the heroin ready for him; he went back at 2:50. An automobile drove up and Chiong got out of the car, with a brown paper bag in his hand. He and Chambless went in the house. Chiong, soon left, with the same paper bag in his hand. No effort was made to stop him and examine the contents of the bag, either upon entering or leaving. Chiong and Forteza had no conversation. Forteza then entered the house and Chambless sold him ⅛ of a kilo of heroin for $5,400, government funds, which were not thereafter recovered.

Rubin Monzon had been a special agent for the Bureau of Narcotics and Dangerous Drugs for three years and four months. He was on surveillance at the Chambless residence on September 6, 1972. He saw Chiong leave the house at the conclusion of the first visit. He saw agent Forteza leave at one o'clock. At

1:30 o'clock he saw a Chevelle automobile arrive at the Chambless residence. A man by the name of Juan Anzel got out and went in, where he remained a short time. He left in the Chevelle with a man named Jorge, who had been there all along. Monzon followed them but lost them in traffic. About 2:15 he was notified via radio from another agent that Jorge and Anzel had returned to the Chambless residence and Jorge had carried a bulky brown paper bag into the house. He left about 2:30, without the bag. Agent Forteza showed up at 2:50; Chiong appeared at 2:55. The agent saw Chiong enter and leave, carrying the same paper bag.

Special agent Billy Joe Church had been with the Bureau a year and eight months. He participated in the Chambless surveillance on September 6. He verified the previously recited narrative. He personally saw Jorge enter and leave the house with a big brown paper bag but, contrary to what agent Monzon said, he did not see the bag in Jorge's possession when he left. He had reason to suspect that both Jorge and Anzel were involved in narcotics activities. The bag Chiong had was about 6 x 6 (inches). He carried it both in and out of the house. The Jorge bag looked like a 50 pound grocery bag.

At the close of this testimony, Chiong moved for a directed verdict of acquittal, which was denied.

Chiong took the stand in his own behalf, testifying through an interpreter, and stated that he was a lobster fisherman, a former resident of Cuba (as was Chambless). He had never been arrested for or convicted of a criminal offense. He claimed that he went to Chambless' on September 6 to collect house rent on behalf of his sister, the owner of the house; that narcotics were not mentioned, that Chambless told him to return later for the money, that he went back that afternoon for the money, that Chambless paid him and he left. He said the brown paper bag contained tickets and bills about his lobster business, that he did not leave the bag in the car because there were too many people around and he was afraid he would lose the bills.

The jury found Chiong guilty. This necessarily means that it did not accept his version of the contacts with Chambless on September 6, 1972. It is of some interest to note that after the verdict Chiong was in such distress that the trial judge noticed it and said, "Give him some help there, please. Give him some water, please". It is also to be remembered that after the jury retired to consider its verdict it asked to have the testimony of special agent Forteza and the testimony of Chiong read back in the entirety, which was done.

It is to be recognized, also, that the jury rejection of Chiong's testimony did not relieve the government of its obligation to present evidence sufficient to support the allegations of the indictment beyond a reasonable doubt, especially since Chiong gave no testimony from which the jury could affirmatively find guilt.

This case is reminiscent of Causey v. United States, 5 Cir., 1965, 352 F.2d 203. *Causey* was a conspiracy case. Chiong's case is not. In *Causey* we said that "A suspicion however strong, is not proof and will not serve in lieu of proof * * * Guilt of conspiracy may not be inferred from mere association * * * The Prosecution certainly proved by association with the known guilty parties Burl Causey had an opportunity to become a conspirator * * * It did not prove that the crime followed the opportunity".

Chiong was a man with no prior criminal record, not even a misdemeanor conviction. That he was a lobster fisherman and that his sister owned the house where Chambless lived is not disputed.

Jorge was suspected of being involved in narcotics.

Chiong has been convicted of the possession of heroin with the intent to distribute it. He has also been convicted of its actual distribution. Yet not a single eyewitness in this voluminous record

ever saw any heroin in his possession, nor did they see him distribute any.

Of course, circumstantial evidence may support a conviction if sufficiently strong, in the absence of any other reasonable hypothesis, to establish guilt beyond a reasonable doubt. What are the circumstances here? Chiong, the man with no prior criminal record, is in a house which belonged to his sister at 12:30 and again at 3 o'clock. On the second trip he took a small paper bag in the house and right out again. No one made any effort to see what was in the bag.

But Chiong was not the only man who carried a paper bag in that house. About a half an hour before he appeared, Jorge, an officially suspected narcotics operator, carried a paper bag into the house and no one saw it come out again. True, it was a large paper bag but no one, not even special agent Forteza who had the best chance to know what was in it, has ever told us what it contained.

The government pins its position on such statements made by Chambless to the special agent that "my man has been here", "I will have the stuff here at 3 o'clock", and so on.

Even if this evidence were admissible against Chiong, which in the absence of a conspiracy count we greatly doubt, Chambless did not call Chiong's name in any of those statements. The presence and activities of Jorge could as well have made the statements applicable to him as to Chiong.

■ Upon a careful reading of this record we are left with an abiding conviction that the government's evidence failed to eliminate all reasonable doubt that Chiong's paper bag contained hereoin. Chiong *may be* guilty, but that is not the standard. The evidence must have been sufficient to support a jury belief beyond a reasonable doubt that he was, in fact, guilty.

Chiong has been sentenced to imprisonment for five years, a not unreasonable sentence if he were guilty. On the record now before us we must in good conscience say that the government did not carry the burden which was a prerequisite to such serious consequences.

The Judgment of the District Court as to Suarez is affirmed.

The Judgment of the District Court as to Chiong is reversed and remanded, with directions that the indictment be dismissed.