UNITED STATES of America,
Plaintiff-Appellee,

v.

Jose Hector Santos VERGARA,
Defendant-Appellant.

No. 82–2122
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 14, 1982.

Mitchell Esper, Richard D. Esper, El Paso, Tex., for defendant-appellant.

Daniel K. Hedges, U. S. Atty., James R. Gough, Chief Asst. U. S. Atty., John Potter, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

Jose Hector Santos Vergara and five others [1] were jointly indicted for conspiracy to possess heroin with intent to distribute, possession with intent to distribute and distribution, contrary to 21 U.S.C. §§ 846 and 841(a)(1). Vergara and Daniel Espinoza were convicted in a trial by jury. Vergara challenged the sufficiency of the evidence at trial and reurges that contention on appeal.[2] Finding no reversible error, we affirm.

### Facts

The transcript of evidence reflects a series of drug transactions during February and March of 1979 between one or more of the five indictees and undercover officer Jose Hernandez of the Laredo, Texas Police Department. In early February, Dennis Harker, a Drug Enforcement Agency (DEA) agent, directed Hernandez to purchase heroin from Roberto Melendez and to attempt to ascertain his "source" of supply.

On February 8, 1979, a confidential informant introduced Hernandez to Melendez at 1106 Price Street, Laredo, the residence Melendez shared with Rosalinda Prado. The informant made known Hernandez's interest in purchasing one-half ounce of heroin for $750. Later that day, Hernandez returned and bought a one-half gram sample from Melendez for $15. Prado was present during the transaction, which took place in Hernandez's vehicle parked in front of the Price Street residence. Harker and other federal agents, working with local agents, had the residence under surveillance and observed the purchase.

Later on February 8, Hernandez made one fruitless trip to the Price Street residence, but then returned to see Pablo Pedraza enter Melendez's home. Melendez exited the house, joined Hernandez waiting in his vehicle nearby, and exchanged one-half ounce of heroin Pedraza had supplied for $750 in cash. Hernandez told Melendez that he would purchase more the following week if his "man" was satisfied with the quality. The surveillance team observed this transaction.

On March 2, 1979, Hernandez resumed contact with Melendez. Early in the morning, under the watchful eyes of the surveillance officers, Hernandez went to the Price Street residence and obtained from Prado a telephone number where Melendez might be reached. Within two hours, Hernandez and Melendez met four times on the parking lot of a grocery store on Guadalupe Street. The men engaged in extensive negotiations during these meetings, finally agreeing upon the sale of one ounce of heroin for $1,800. At Melendez's suggestion, Hernandez followed Melendez and Daniel Espinoza to a residence at 2406 San Salvador Street. Upon arrival, Espinoza entered the house and quickly returned, accompanied by Mario Ramos. After the two joined Hernandez and Melendez, Ramos entered Hernandez's auto and exchanged an ounce of heroin for $1,800. Ramos urged Hernandez to contact him through Espinoza for future purchases of heroin. The surveillance team witnessed the travels and transaction.

---

1. The co-indictees were Daniel Espinoza, Roberto Melendez, Pablo Pedraza, Rosalinda Prado and Mario Ramos.

2. Count 1 charged conspiracy, Count 6 charged possession of heroin with intent to distribute, Count 7 charged distribution. The sufficiency of the evidence on Counts 1 and 6 is challenged herein.

Hernandez again contacted Melendez on March 15, 1979, seeking to negotiate the purchase of a quantity of approximately five ounces of heroin at a price of $1,700 per ounce. Hernandez and Melendez arranged to meet in the parking lot of a bar near the residence on Price Street. It was agreed that Hernandez would wait there for Melendez to return from a meeting with his source. Surveillance agents tracked Melendez and Prado, traveling in Prado's Pinto, to Vergara's home on Garden Street. Prado briefly entered the house before departing the area with Melendez. On two more occasions, within less than one-half hour, Melendez, Prado and Espinoza were seen driving up to the Vergara home. Each time, Espinoza entered and remained in the house for a few minutes, after which he and his companions immediately drove away. After the second visit, the two reported to Hernandez that they had not yet succeeded in contacting their source but expected to do so very soon. They made it clear that their efforts were on-going.

Vergara returned home around 1:30 p.m., remained a few minutes, left, and again returned approximately 30 minutes later. Melendez, Prado, and Espinoza awaited Vergara's return. Espinoza joined Vergara in front of his house and spoke briefly with him. During the conversation, Vergara pointed toward his automobile, a black on white Cadillac. Espinoza, empty-handed, walked to the automobile, opened the door, reached inside and retrieved a brown paper bag. He placed the bag against his side, quickly rejoined his companions, and drove immediately to meet the waiting Hernandez. Throughout the trip from Vergara's home to the rendezvous with Hernandez, the Pinto was under constant surveillance. No stops were made; nothing and no one entered or left the vehicle.

Upon arrival at the parking lot where Hernandez awaited his return, Melendez entered Hernandez's car and delivered the brown paper bag. After checking the contents, Hernandez signaled officers nearby who arrested Melendez, Prado and Espinoza. Officers were dispatched to arrest Vergara. The brown bag contained heroin.

## Sufficiency of the Evidence

Vergara contends that the evidence adduced at trial is insufficient to prove beyond a reasonable doubt that he conspired to possess heroin with intent to distribute, or that he actually possessed heroin with such intent. In considering these challenges, we are bound to view the evidence and all inferences that reasonably may be drawn therefrom in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), accepting all credibility choices, whether based on direct or circumstantial evidence, that tend to support the jury's verdict. *United States v. Salinas*, 654 F.2d 319 (5th Cir. 1981). We will reverse only if a reasonably minded jury must necessarily have entertained a reasonable doubt of a defendant's guilt. *United States v. Bell*, 678 F.2d 547 (5th Cir. 1982) (en banc).

## Conspiracy

Count 1 alleges that between February 8 and March 15, 1979, Vergara and others conspired to possess heroin with intent to distribute. Vergara argues that the government failed to prove beyond a reasonable doubt that he knew of or intentionally participated in a conspiracy, that he engaged in drug-related conversations with any of the coconspirators, or that any connection he may have had with the conspiracy went beyond mere presence at the scene of criminal activity or innocent association with one or more of the coconspirators.

As we recently observed in *United States v. Davis*, 666 F.2d 195, 201 (5th Cir. 1982), "[t]he essence of conspiracy under section 846 is an agreement to violate the narcotics laws." Before a defendant may be convicted of conspiracy under section 846, the government must prove both the existence of an agreement to commit a crime and that each conspirator knew of, intended to join and participated in the conspiracy. *United States v. Glasgow*, 658 F.2d 1036 (5th Cir. 1981). No showing of an overt act is necessary in a drug conspiracy

prosecution, *United States v. Davis*,[3] but knowledge, intent and participation, the essential elements of the crime, must be proved beyond a reasonable doubt. *United States v. Arredondo-Morales*, 624 F.2d 681 (5th Cir. 1980).

▉ An agreement between the coconspirators and the defendant need not be proved by direct evidence, but may be inferred from concert of action. *United States v. Dean*, 666 F.2d 174 (5th Cir. 1982). Although mere presence at the scene of the crime or close association with a coconspirator will not support an inference of participation in a conspiracy, *United States v. Davis*, a defendant's voluntary participation may be inferred from " 'a development and a collocation of circumstances.' " *United States v. Marx*, 635 F.2d 436, 439 (5th Cir. 1981) (*quoting* from *United States v. Malatesta*, 590 F.2d 1379, 1381 (5th Cir.) (en banc), *cert. denied*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979)). Similarly, a defendant's guilty knowledge may be established through proof of surrounding circumstances. *United States v. Arredondo-Morales.* A conviction will not be reversed for lack of evidence that a defendant was acquainted with or knew all of the coconspirators, *United States v. Wilson*, 657 F.2d 755 (5th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1456, 71 L.Ed.2d 667 (1982), or lack of evidence that he knew each detail of the conspiracy, *United States v. Rosado-Fernandez*, 614 F.2d 50 (5th Cir. 1980), or because he became a member of the conspiracy after its inception, or played only a minor role in the overall scheme, *United States v. Davis; United States v. Alvarez*, 625 F.2d 1196 (5th Cir. 1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

▉ The record contains ample evidence to support the finding that a conspiracy existed; contentions to the contrary are without merit. However, the question whether Vergara's involvement in the conspiracy was established is entitled to close scrutiny.

In the course of the first two purchases by Hernandez, it became clear that Melendez had more than one "source." The flurry of activity on March 15, 1979, including the multiple visits to Vergara's home, and the coconspirators' report of their difficulty in contacting their source, is grist for the jury's fact-finding mill. Vergara's actions, particularly his motioning Espinoza over to his vehicle from which Espinoza secured the brown paper bag, and the immediate delivery of that bag to Hernandez, provide additional grist.

While each piece of evidence, standing alone, may have been susceptible of innocent interpretation, we are convinced that the jury reasonably could have concluded that the evidence, when examined in the aggregate, sufficed to establish that Vergara was a culpable member of the conspiracy as charged in the indictment.

### Possession

Count 6 charges Vergara with possessing heroin with intent to distribute, a charge he disputes, contending that the government failed to carry its burden of proving that he actually possessed or exercised dominion or control over the heroin delivered to Hernandez, or that the bag removed from his car was the same heroin-laden bag seized from Melendez.

▉ Three elements must be proven by the government in order to sustain a conviction for the crime of possession of heroin with intent to distribute: "(1) knowing (2) possession of heroin (3) with intent to distribute it." *United States v. Richards*, 638 F.2d 765, 768 (5th Cir.) *cert. denied*, 454 U.S. 1097, 102 S.Ct. 669, 70 L.Ed.2d 638 (1981). Possession may be actual or constructive, may be joint among several defendants, and may be proved by circumstantial as well as direct evidence. *United States v. Wilson.* Constructive possession has been defined as " 'the knowing exercise

---

**3.** We note but attach no significance, in this case, to the overt act allegation in the indict- ment.

of, or the knowing power or right to exercise, dominion and control over the proscribed substance.'" *United States v. Glasgow*, 658 F.2d at 1043 (*quoting* from *United States v. Marx*, 635 F.2d at 440). One who owns or exercises dominion or control over a motor vehicle in which a contraband substance is concealed may be deemed to possess the contraband. *Id.; United States v. Riggins*, 563 F.2d 1264 (5th Cir. 1977), *cert. denied*, 439 U.S. 848, 99 S.Ct. 148, 58 L.Ed.2d 150 (1978).

■ Since there is no evidence of actual possession, the charge against Vergara necessarily rests on constructive possession. We find adequate evidence to support the jury's conclusion in that regard. We are not persuaded that Vergara was merely present at the scene of a criminal act or that he was an innocent acquaintance or associate of persons who possessed contraband. The coconspirators' repeated visits to Vergara's home, followed by their reference to abortive attempts made to contact their source, Vergara's ownership and exclusive control of the Cadillac, his brief verbal exchange with Espinoza and apparent direction and approval of the latter's entry of his Cadillac for the purpose of securing the brown paper bag, Espinoza's demeanor upon retrieving the bag, the brief, uninterrupted journey of coconspirators Melendez, Prado and Espinoza culminating in the putative "sale" to Hernandez, all justify a finding of constructive possession. *United States v. Ramos*, 666 F.2d 469 (11th Cir. 1982); *United States v. Warren*, 594 F.2d 1046 (5th Cir. 1979).

■ Invoking our decision in *United States v. Suarez*, 487 F.2d 236 (5th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1572, 39 L.Ed.2d 878 (1974), Vergara contends that the government failed to demonstrate a link between the bag removed from his car and that seized from Melendez. *Suarez* is distinguishable and lends no support to Vergara's contention.[4] We conclude that the evidence is sufficient to allow a reasonably minded jury to synthesize the circumstances displayed and to find Vergara guilty of possessing heroin.

■ Finally, we find no inadequacy with respect to the proof of intent to distribute, when assessed in light of the rubric that intent to distribute may be inferred from the possession of a large quantity of drugs. *United States v. Richards; United States v. Love*, 599 F.2d 107 (5th Cir. 1979); *United States v. Riggins*. The jury might also infer intent to distribute from evidence of the price of the heroin. *United States v. Sheikh*, 654 F.2d 1057 (5th Cir. 1981), *cert. denied*, 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). Vergara's possession of five ounces of heroin, valued at approxi-

---

4. In *Suarez*, we determined that the government's failure to eliminate all reasonable doubt that the paper bag defendant Chiong was seen carrying into the home of a known drug offender, Chambless, contained heroin compelled a reversal of his conviction on a charge of possession of this substance with intent to distribute. The evidence in the record before us differs from that offered against Chiong in several significant respects. It was undisputed that Chiong's sister owned the house where Chambless lived. Taking the stand on his own behalf, Chiong testified that he had gone to see Chambless to collect rent on behalf of his sister but was told by Chambless to return later for the money. About a half hour before Chiong, a man with no criminal record, returned, Jorge, a known drug offender, was observed to carry a paper bag into the Chambless house and leave without it. Chiong testified that his brown paper bag contained tickets and bills related to his business, and that he did not leave the bag in his car during his second visit to Chambless' house for fear someone would appropriate the bills. None of the surveilling officers apprehended Chiong, either upon entering or leaving the house, in order to examine the contents of the bag. Thus, in contrast to the case at bar, no agent ever saw heroin in Chiong's possession, be it actual or constructive. Under these particular circumstances, the *Suarez* court thought it equally likely that Jorge was Chambless' source, or that Chiong's paper bag did not contain heroin, and determined that while Chiong might well be guilty of the possession with intent charge, the evidence was insufficient to prove his guilt beyond a reasonable doubt.

No such equipoise in the evidence appears in the present record. There is, in our estimation, sufficient evidence from which the jury could infer that appellant constructively possessed the five ounces of heroin with intent to distribute.

mately $8,500, thus gives rise to the inference of his intent to distribute.

AFFIRMED.