**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Franklin WALES, Defendant–
Appellant.**

No. 01–5320.

United States Court of Appeals,
Sixth Circuit.

June 18, 2003.

BEFORE: DAUGHTREY and GIBBONS, Circuit Judges; and MILLS, District Judge.*

## OPINION

MILLS, District Judge.

After a three day trial, a federal jury found Franklin Wales guilty of the two crimes with which he had been charged in a Superseding Indictment: conspiracy to possess with the intent to distribute cocaine and possession with intent to distribute cocaine. Based upon these convictions, the district court sentenced Wales to 360 months of imprisonment on each count of conviction to be served concurrently.

In this direct appeal, Wales contends that the district court committed certain errors which entitle him to an acquittal, to a new trial, and/or to a new sentencing hearing.

After considering Wales' arguments and reviewing the district court record, we AFFIRM Wales' convictions and sentence for the reasons set forth below.

## I.  BACKGROUND

On March 22, 2000, while performing a routine check of the air mail facility at the Louisville, Kentucky, airport, police officers for the city of Louisville became aware of an unusual package. The package had been sent by Federal Express from Apple Valley, California, to 3708 Rosa Terrace, Louisville, Kentucky. Although the package was addressed to a "Jeff Farrell," this address was actually the residence of Kenneth and Deborah Coatley.[1]

Based upon a drug dog's alert, Louisville Detective Mike Brackett obtained a search warrant to open the package. In addition to finding clothing, shoes, and compact discs, Detective Brackett found a kilogram of cocaine in the package. Following standard procedures, Detective Brackett removed most of the cocaine, replaced it with a "dummy" kilogram package, placed an electronic tracking transmitter[2] in the package, and planned a controlled delivery of the package to the Coatley's residence. Detective Brackett also procured an anticipatory search warrant for the Coatley's residence, and then, he and other law enforcement officers began to conduct undercover surveillance (including videotaped surveillance) of the Coatley's home.

At approximately 11:06 a.m., that same day, an undercover police officer posing as a Federal Express deliveryman attempted to deliver the package to the Coatley's house. Although he knocked and rang the doorbell, no one answered. Accordingly, the undercover police officer left and took the package with him.[3]

After the undercover officer left, Deborah Coatley telephoned Franklin Wales on his cellular telephone and informed him that, although the Federal Express delivery man had come to the front door, he did not deliver the package. Approximately ten minutes later, Wales, Raphael Singleton, and Robert Talley arrived at the Coatley's home. Wales then exited the vehicle

---

*The Honorable Richard Mills, United States District Judge for the Central District of Illinois, sitting by designation.

1.  Raphael Singleton testified that he obtained the Coatley's permission to have a package of clothing sent to their address *via* Federal Express.

2.  Police officers place electronic tracking transmitters in packages because the transmitters will alert them when the package has been opened.

3.  Although no one answered the door, the police officers conducting the surveillance could tell that there were people in the house. In fact, the officers later determined that Deborah Coatley was home at the time along with her son, daughter, and granddaughter.

and entered the Coatley's home alone. A few minutes later, Wales returned from the house, got back into the car, and the three men drove away.

Sometime thereafter, the undercover officer returned to the Coatley's home in order to, again, attempt delivery of the package. Although no one answered the door, the undercover officer left the package on the front porch. Deborah Coatley then called Wales on his cellular telephone and informed him that the package had been left on the front porch.

Approximately five to ten minutes later, Wales, Singleton, and Tally returned to the Coatley's home. Singleton retrieved the package from the front porch, and three men went inside the house. Immediately upon the three men's entrance, Deborah Coatley, her son, daughter, and granddaughter left the house.

Approximately two minutes after the three men had entered the residence, the electronic tracking transmitter which the police officers had placed in the package alerted the police officers (who were conducting the undercover surveillance on the Coatley's residence) that the package had been opened. Accordingly, the police officers went to the front door, knocked, announced "police, search warrant", and then began attempts to forcibly enter the house by using a battering ram on the front door. Although the officers were unsuccessful in their attempts to forcibly open the door (they only made a hole it), the police were able to see Singleton and Tally in the living room sitting on the couch. Thus, the police instructed Talley to open the door, and he complied.

Meanwhile, Detective Mike Brackett had gone to the rear of the house and saw Wales "starting out the back window." Detective Brackett told Wales to stand still, and then, another officer entered the bedroom and secured Wales. Thereafter, the officers secured the three men in the living room, read them their *Miranda* rights, and began searching the house for the dummy package of cocaine.

After a short search, the officers found the dummy package of cocaine underneath a dresser located in the bedroom from which Wales had attempted to flee through the window. In fact, Wales directed the officers to the dresser after being taken to the bedroom. Specifically, the officer asked Wales "where the dope was", and Wales "pointed to nodded to under the dresser." The officer found the package "in the rear corner underneath the dresser."

On April 4, 2000, a federal grand jury returned a two Count Indictment against Wales and Singleton charging them with conspiracy to possess with the intent to distribute cocaine and with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841, 21 U.S.C. § 846, and 18 U.S.C. § 2. On August 31, 2000, Singleton entered an open plea of guilty to both counts of the Indictment. On September 6, 2000, a federal grand jury returned a Superseding Indictment against Wales. The only changes made to the Superseding Indictment from the original Indictment were the deletion of Singleton as a defendant because he had pleaded guilty and the addition of the amount of cocaine involved in the offenses, *i.e.*, 500 grams or more of cocaine.

On November 6, 2000, immediately prior to the start of the trial, the Government filed a notice, pursuant to 21 U.S.C. § 851, of its intent that Wales' two prior felony drug convictions be taken into consideration in determining his sentence. On November 9, 2000, after three days of trial, a jury found Wales guilty of both Counts charged in the Superseding Indictment. On February 26, 2001, the district court found Wales to be a career offender and sentenced him to 360 months of imprison-

ment on both Counts of conviction to be served concurrently. On March 2, 2001, Wales filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Wales raises five issues which he asserts entitles him to an acquittal, to a new trial, and/or to a new sentencing hearing.

### A. *JURY SELECTION*

*First,* Wales argues that the jury selection process used in the United States District Court for the Western District of Kentucky violated his Sixth Amendment right to be tried by a jury which is comprised of a fair cross-section of the community. Wales (who is black) asserts that there were no blacks in his jury venire despite the fact that black registered voters comprise 8.5% of the total registered voters in the district. Wales contends that blacks are generally under-represented as members of jury pools and that this under-representation is due to systematic exclusion within the district. Accordingly, Wales claims that his conviction must be overturned and that he be given a new trial because his Sixth Amendment rights were violated.

The Government argues that, at trial, Wales did not object to the composition of the entire jury venire; on the contrary, Wales' only objection was that the panel from which the jurors were to be selected contained no potential black jurors. Thus, the Government claims that Wales has waived his argument regarding the composition of the entire jury venire.

Furthermore, the Government contends that Wales has done nothing more than show that his jury panel was all white, that he has not shown any active discrimination within the district to keep blacks off of juries, that he has not shown that distinctive groups were systematically excluded from being jurors or potential jurors, and

that he has not shown that the representation of blacks on jury venires is not fair and reasonable in relation to the number of blacks within the district. Therefore, the Government asks the Court to affirm Wales' convictions.

"Whether a defendant has been denied his right to a jury selected from a fair cross-section of the community is a mixed question of law and fact, which we review *de novo.*" *United States v. Allen,* 160 F.3d 1096, 1101 (6th Cir.1998). In order to establish a *prima facie* case under the Sixth Amendment that a jury does not represent a fair cross-section of the community, the movant must prove:

(1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *United States v. Ovalle,* 136 F.3d 1092, 1098 n. 7 (6th Cir.1998).

In the instant case, Wales has not shown that the representation of blacks in venires from which juries are selected in the Western District of Kentucky is not fair and reasonable in relation to their population percentage. During the trial, Sharon Palmer, the jury administrator for the Western District of Kentucky, testified that the jury pool from which Wales' fifty-person jury panel was drawn consisted of 250 people. Although he notes that his fifty-person jury panel contained no potential black jurors, Wales has failed to cite to any evidence in the district court's record which would indicate the racial composition

of the 250–person jury venire from which his jury panel was selected.

As this Court has previously explained: "Appellants ... must show more than that their particular panel was unrepresentative. *Duren* states that we look at the 'venires' from which 'juries' are selected, *id.* at 364, and it has long been the case that defendants are not entitled to a jury of any particular composition-only to a panel from which distinctive groups were not 'systematically excluded.'" *Allen*, 160 F.3d at 1103(quoting *Taylor v. Louisiana*, 419 U.S. 522, 538, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)). Thus, the Court rejects Wales' *post hoc, ergo propter hoc* argument that, because black registered voters comprise 8.5% of the total registered voters in the Western District of Kentucky, his particular jury panel should have contained approximately four black potential jurors.

Furthermore, Wales has not established that any under-representation by blacks as jurors was due to a systematic exclusion from the jury selection process. In fact, William Clark, the Chief Deputy Clerk of the Court for the Western District of Kentucky, testified at Wales' sentencing hearing that the Western District of Kentucky's jury administration plan for the qualification and selection of jurors includes methods and procedures to ensure that the master jury wheel includes a percentage of minorities equivalent to the percentage of minorities who reside within the district.

Finally, this Court has previously upheld the jury selection process within the Western District of Kentucky as being constitutional and representative of a fair cross-section of the community, *Allen*, 160 F.3d at 1103–04, and Wales has failed to offer any evidence with which to convince the Court that its decision in *Allen* was erroneous and should be overturned. Accordingly, the Court finds that Wales was not denied his Sixth Amendment right to be tried by a jury which is comprised of a fair cross-section of the community.

### B. *RULE 404(b) EVIDENCE*

*Second,* Wales argues that the district court erred in admitting evidence, pursuant to Federal Rule of Evidence 404(b), to the jury that he had two prior felony drug convictions. Wales asserts that this evidence was not necessary to the prosecution of this case and that the evidence's only purpose was to prove propensity to commit the charged offenses. Moreover, Wales contends that the district court erred in failing to provide an appropriate limiting instruction to inform the jury of the purpose of admitting evidence of his two prior felony drug convictions.

The Government argues that the district court did not err in admitting the evidence of Wales' prior felony drug convictions at trial because such evidence is admissible in order to prove specific intent crimes such as conspiracy to possess with the intent to distribute narcotics. Moreover, the Government claims that Wales' counsel stipulated to the admissibility of Wales' two prior felony drug convictions, and therefore, if it was error to admit this evidence, it was invited error. Finally, the Government asserts that, not only did the district court give a proper limiting instruction to the jury when it admitted the evidence of Wales' prior felony drug convictions (and, again, at the end of the case), the district court gave a limiting instruction which was substantially similar to the one proposed by Wales' counsel.

This Court reviews the district court's evidentiary rulings regarding the admissibility of Rule 404(b) evidence for an abuse of discretion. *United States v. Mack*, 258 F.3d 548, 553 n. 1 (6th Cir.2001).

In his opening statement, Wales' trial counsel informed the jury: "You are going

to find out [Wales] had gotten into trouble with the law on a couple of occasions. Yes, it was for drug offenses." Moreover, when the Government advised the district court that it intended to seek the introduction of Wales' two prior felony drug convictions as evidence to be presented to the jury, Wales' trial counsel responded: "Judge, if my recollection is correct, I believe I referred to these convictions in at least a general way in my opening so I think the jury is aware of them. I think I would be hard-pressed not to agree that—I indicated to Mr. Miller we can stipulate that those convictions exist.... Obviously, Judge, I would like a limiting instruction I think the Court regularly gives in this situation."

■ Based upon Wales' trial counsel's representations to the district court and his statements to the jury, the Court must apply the "invited error doctrine" to this issue. "The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit.'" *United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir.1993)(*quoting Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 60 (6th Cir.1991)). "Invited error, however, does not foreclose relief when the interests of justice demand otherwise. Whether the circumstances of a particular case justify deviation from the normal rule of waiver under this doctrine is left largely to the discretion of the appellate court." *United States v. Barrow*, 118 F.3d 482, 491 (6th Cir.1997)(*citing Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 251 (6th Cir.1991)).

■ Here, the Court finds that the circumstances do not justify a deviation from the normal rule, especially in light of the fact that the district court's admission of the evidence was proper under Rule 404(b). Rule 404(b) provides, in relevant part, that other acts evidence "is not ad-missible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...." *Id.* In addition,

> [t]his court has set forth a three-step process for determining the admissibility of evidence of other acts under Rule 404(b). *United States v. Gessa*, 971 F.2d 1257, 1261–62 (6th Cir.1992)(*en banc*). The first step requires the district court to decide whether there is sufficient evidence that the other act in question actually occurred. *Id.* at 1261. If so, the district court must decide whether the evidence of the other act is "'probative of a material issue other than character.'" *United States v. Johnson*, 27 F.3d 1186, 1191 (6th Cir.1994)(quoting *Huddleston v. United States*, 485 U.S. 681, 686, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). Finally, if the evidence is probative of a material issue other than character, the district court must decide whether the "probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Johnson*, 27 F.3d at 1190.

*United States v. Haywood*, 280 F.3d 715, 719–20 (6th Cir.2002).

The Court finds that all three elements are satisfied. Wales admitted to the district court that he committed the two prior felony drug convictions at issue, and thus, the first element is satisfied. As for the second element, this Court has previously held:

> The second Rule 404(b) step in this case is governed by our decision in *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir.1994), *cert. denied*, 513 U.S. 1115, 115 S.Ct. 910, 130 L.Ed.2d 792 (1995), in which we held that "where there is thrust upon the government,

either by virtue of the defense raised by the defendant or by virtue of the elements of the crime charged, the affirmative duty to prove that the underlying prohibited act was done with a specific criminal intent, other acts evidence may be introduced under Rule 404(b)." In this case, Myers contends that because his defense was that he did not even possess the drugs, "intent" was not in issue. We rejected a similar argument in *Johnson:*

> [R]egardless of Johnson's defense, since the government was obligated to prove not only that Johnson possessed the cocaine, but that he did so with the specific intent of distributing it, the government's evidence of other similar acts of possession with intent to distribute was admissible subject to the court's duty to weigh the probative value of the evidence against its prejudicial effect.

*United States v. Myers,* 123 F.3d 350, 363 (6th Cir.1997)(quoting *Johnson,* 27 F.3d at 1193). Because Wales asserted an actual innocence defense, the Government was allowed to offer evidence of his previous felony drug convictions in order to prove all of the elements of the specific intent crime of conspiracy to possess with the intent to distribute cocaine. As for the third element, the Court agrees with the district court and the Government that the probative value of the evidence was not substantially outweighed by its potential prejudicial effect.

Finally, the Court finds that the limiting instruction which the district court provided regarding the jury's use of this evidence was a correct statement of the law and was given at the appropriate times. Accordingly, the Court finds that the district court did not abuse its discretion in admitting the evidence of Wales' two prior felony drug convictions and that the district court did not err in its limiting instruction to the jury regarding the use of this evidence.

## C. *SUFFICIENCY OF THE EVIDENCE*

*Third,* Wales argues that his convictions should be overturned because the Government failed to present sufficient evidence with which a reasonable jury could find him guilty beyond a reasonable doubt. Specifically, Wales asserts that the Government failed to tender any evidence at trial that he had an on-going agreement with Singleton or anyone else to distribute cocaine. Wales contends that the evidence tendered at trial showed that it was Singleton who gained the Coatley's permission to have a package delivered to their home, that it was Singleton who picked up the package and carried it inside of the Coatley's residence, that it was Singleton who opened the package, and that Singleton, in fact, admitted that the cocaine belonged to him. Wales claims that, at most, the Government's evidence established that he was a mere bystander-someone who was associated with a drug dealer but who did not participate in any drug dealing activities. Accordingly, Wales asserts that his conspiracy conviction must be vacated.

Furthermore, Wales argues that his possession with intent to distribute conviction must be overturned because the Government failed to prove beyond a reasonable doubt that he ever had dominion or control over the drugs in question. Again, Wales contends that the package containing the drugs was sent to the Coatley's home and that Singleton admitted to picking up the package, carrying it into the Coatley's home, and opening it. Wales also notes that, although the contents of the package were dusted for fingerprints, only Singleton's prints were found on it. Thus, Wales contends that there is no evidence to prove

that he ever possessed any cocaine, and he asks the Court to overturn his conviction.

The Government argues that it presented sufficient evidence at trial with which a reasonable jury could find Wales guilty on both Counts charged in the Superseding Indictment. The Government contends that the evidence which it presented to the jury clearly established that Wales was involved in a conspiracy to possess with the intent to distribute cocaine. Moreover, the Government asserts that, in the face of the jury's verdict on the conspiracy Count, Wales' presence with Singleton at the Coatley's house when Singleton retrieved the package containing the cocaine is sufficient in and of itself to support the jury's finding that Wales' constructively possessed the cocaine at issue in Count II of the Superseding Indictment, especially given the evidence that Singleton tossed the cocaine down the hallway to Wales and that Wales hid it underneath a dresser.

This Court has previously held:

In determining whether the evidence supporting [the defendant's] conviction is sufficient, we must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir.2002)(*quoting Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). We "view both circumstantial and direct evidence in a light most favorable to the prosecution," *id.*, and "we draw all available inferences and resolve all issues of credibility in favor of the [factfinder's] verdict," *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir.), *cert. denied*, 534 U.S. 916, 122 S.Ct. 263, 151 L.Ed.2d 192 (2001), and *cert. denied*, 534 U.S. 936, 122 S.Ct. 306, 151 L.Ed.2d 228 (2001).

*United States v. Wade*, 318 F.3d 698, 701 (6th Cir.2003). " 'A defendant claiming insufficiency of the evidence bears a very heavy burden.... Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.' " *United States v. Stines*, 313 F.3d 912, 919 (6th Cir.2002), *quoting United States v. Warwick*, 167 F.3d 965, 971 (6th Cir.1999).

■ In order for a criminal defendant to be found guilty of conspiracy under 21 U.S.C. § 846, the Government must prove, beyond a reasonable doubt, "(1) an agreement by two or more persons to violate the drug laws, and (2) knowledge of, intention to join, and participation in the conspiracy on the part of each conspirator." *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir.1998). Moreover,

"[p]articipation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances." *United States v. Garcia*, 655 F.2d 59, 62 (5th Cir.1981). Mere presence at the crime scene is insufficient. *United States v. Kincade*, 714 F.2d 1064, 1065 (11th Cir.1983)("Although mere presence alone is insufficient to support a guilty verdict, presence is a material and probative factor which the jury may consider in reaching its decision."). "Proof of knowledge is satisfied by proof that the defendant knew the essential object of the conspiracy.... Every member of a conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement." *United States v. Cuni*, 689 F.2d 1353, 1356 (11th Cir.1982). "The connection of the defendant to the conspiracy need only be slight, if there is sufficient evidence to establish that connection beyond a reasonable doubt." *United States v. Bati-*

*mana,* 623 F.2d 1366, 1368 (9th Cir.), *cert. denied,* 449 U.S. 1038, 101 S.Ct. 617, 66 L.Ed.2d 500 (1980). A defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances. *United States v. Vergara,* 687 F.2d 57, 61 (5th Cir. 1982). Further, "[a] conviction will not be reversed for lack of evidence that a defendant ... knew each detail of the conspiracy." *Id. See generally United States v. Ayotte,* 741 F.2d 865 (6th Cir.), *cert. denied,* 469 U.S. 1076, 105 S.Ct. 574, 83 L.Ed.2d 514 (1984).

*United States v. Christian,* 786 F.2d 203, 211 (6th Cir.1986).

In the case *sub judice,* viewing the evidence in a light most favorable to the Government, the Court finds that the Government proffered sufficient evidence during trial with which a reasonable jury could find Wales to be guilty beyond a reasonable doubt of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846. The Court believes that the following evidence presented at trial by the Government was a sufficient basis upon which the jury could conclude that Wales was guilty beyond a reasonable doubt:

(1) It was Wales, not Singleton, who was the Coatley's long-time friend, and thus, it would be reasonable for the jury to believe that Wales, not Singleton, made the arrangements for the package to be delivered to the Coatley's residence.[4]

(2) Deborah Coatley telephoned Wales on his cellular telephone to inform him that Federal Express had come to her house but that the deliveryman had not left the package.[5]

(3) Deborah Coatley telephoned Wales again to inform him that Federal Express had arrived and had, this time, left the package at her house.

(4) At the scene of the arrest in the Coatley's house, Wales stated that Singleton had tossed the package down the hallway to him and that he hid it under the dresser in the bedroom from which he attempted to flee out of the window.[6]

(5) The placement of the package of cocaine was so far underneath the dresser that it could not easily be seen or retrieved, thereby implying Wales' guilt because attempted concealment implies that Wales knew that it contained incriminating evidence.

(6) Wales admitted to receiving money from Singleton for his role in the offense.[7]

(7) Wales attempted to flee which is circumstantial evidence of guilt.

(8) The Coatley's and Singleton gave testimony at trial favorable to Wales which was inconsistent with their prior pre-trial statements, and the jury was allowed to conclude that their testimony was biased in an attempt to gain Wales' acquittal.

Based upon this and the other evidence presented at trial, the Court believes that a reasonable jury could conclude beyond a

---

4. Deborah Coatley testified that she was merely "acquainted" with Singleton and that they had only met the previous year. On the other hand, the Coatleys had known Wales for over twenty years, and he was like a member of their family.

5. Although, at trial, she denied making this telephone call, Deborah Coatley admitted in a written statement prior to trial that she had called Wales to inform him of the attempted delivery.

6. Although, at trial, Wales denied making this statement and testified that one of the officers must have kicked the package of cocaine underneath the dresser, the jury was entitled to disbelieve his testimony.

7. At trial, however, Wales accused the DEA agent of "putting words in his mouth." Nevertheless, law enforcement officials recovered $188.00 from Wales, and Wales told the officers that Singleton had paid him $200.00 for his help with the package.

reasonable doubt that Wales was guilty of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846.

▉ Furthermore, the Court finds that the Government presented sufficient evidence with which a jury could find Wales guilty beyond a reasonable doubt of possession with the intent to distribute cocaine in violation of 21 U.S.C. § 841. In order to obtain a conviction under 21 U.S.C. § 841(a)(1), the Government must prove that the defendant knowingly and intentionally possessed a controlled substance with the intent to distribute it. *United States v. Forrest,* 17 F.3d 916, 919 (6th Cir.1994).

As noted *supra,* Wales told a law enforcement officer, after being placed in custody, that Singleton had tossed the package to him and that he put it underneath the bedroom dresser. In addition, although Singleton was the individual who picked up the package from the front porch and took it into the Coatley's house, it is clear that Wales constructively possessed the package (and, thus, the drugs inside), and constructive possession is sufficient to sustain a conviction under § 841(a)(1). *See United States v. Gibbs,* 182 F.3d 408, 424 (6th Cir.1999)(holding that the government is not required to prove actual possession of a controlled substance, because constructive possession is sufficient to establish a violation of § 841(a)(1)); *see also United States v. Reed,* 141 F.3d 644, 651 (6th Cir.1998) ("Constructive possession exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object not in his or her actual possession. Like actual possession, constructive possession may be proved by circumstantial evidence.")(internal quotations omitted). Accordingly, the Court finds that the Government presented sufficient evidence with which a reasonable jury could find Wales guilty beyond a reasonable doubt on both Counts with which he was charged in the Superseding Indictment.

### D. *SENTENCING HEARING*

*Fourth,* Wales argues that he is entitled to a new sentencing hearing because the district court erred by failing to make certain findings of fact on his objections at his sentencing hearing pursuant to Federal Rule of Criminal Procedure 32. Wales asserts that, at his sentencing hearing, he objected to receiving a two-level enhancement, pursuant to U.S.S.G. § 3B1.1, based upon his role in the offense and that he objected to several factual errors contained within the Presentence Investigation Report ("PSR"). Rather than resolving these objections, Wales claims that the district court simply ignored his objections, made no findings whatsoever, and merely adopted the PSR as written. Wales contends that these objections remain relevant because the United States Bureau of Prisons ("BOP") considers the PSR in determining where a defendant will serve his sentence of confinement, and therefore, he is entitled to a new sentencing hearing.

The Government argues that Wales did not lodge a timely objection to the U.S.S.G. § 3B1.1 enhancement, and therefore, this Court must review his argument for plain error. The Government denies that the district court erred in giving Wales an enhancement pursuant to his role in the offense, but it asserts that, assuming *arguendo* that it was error to enhance Wales' sentence pursuant to U.S.S.G. § 3B1.1, the imposed sentence does not affect the fairness, integrity or public reputation of the judicial proceedings. Thus, the Government claims that Wales has failed to establish plain error.

In any event, the Government contends that the district court's failure to make

findings of fact at Wales' sentencing hearing should be considered harmless error (if error at all) because, regardless of the district court's rulings on his objections, Wales' sentencing guideline range would have remained the same due to his status as a career offender pursuant to U.S.S.G. § 4B1.1. Accordingly, the Government asserts that Wales is not entitled to a new sentencing hearing.

■ This court reviews *de novo* a district court's application and interpretation of the sentencing guidelines; however, the district court's factual determinations will not be disturbed unless they are clearly erroneous. *United States v. O'Dell*, 247 F.3d 655, 674 (6th Cir.2001). Because Wales did not raise a timely objection to his PSR, the Court reviews the district court's imposition of his sentence for plain error. *United States v. Cotton*, 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002).

■ Wales' argument is without merit for three reasons. *First*, Wales has failed to comply with Federal Rule of Appellate Procedure 28(a)(9)(A) in that he has not attempted to develop this issue in his appellate brief. Therein, Wales merely asserts that the district court erred in failing to make factual findings at his sentencing hearing. However, other than the one objection to the U.S.S.G. § 3B1.1 enhancement, Wales does not reveal what the other "factual discrepancies" are upon which the district court should have made a finding but failed to do so.

■ *Second*, Federal Rule of Criminal Procedure 32(b)(6)(B) provides, in relevant

part, that "[w]ithin 14 days after receiving the presentence report, the parties shall communicate in writing to the probation officer, and to each other, any objections to any material information, sentencing classifications, sentencing guideline ranges, and policy statements contained in or omitted from the presentence report." *Id.*[8] Wales did not file any written objections to his PSR. Consequently, the district court was entitled-as it did-to adopt the PSR as its findings of fact. *See* Rule 32(b)(6)(D)("Except for any unresolved objection under subdivision (b)(6)(B), the court may, at the hearing, accept the presentence report as its findings of fact.").[9]

*Third,* Rule 32(b)(6)(D) provides, in relevant part, that "[f]or good cause shown, the court may allow a new objection to be raised at any time before imposing sentence." *Id.* A review of the transcript of the sentencing hearing establishes that neither Wales nor his counsel attempted to show good cause for failing to raise any objections to the PSR prior to Wales' sentencing hearing. Likewise, Wales has not attempted to make a "good cause" showing on appeal.

■ Nevertheless, even if the Court were to find that Wales had established good cause for failing to raise his objections to the PSR prior to the sentencing hearing, Wales would still not be entitled to a new sentencing hearing because he has failed to show that the district court's sentence constituted plain error. During Wales' sentencing hearing, Wales' counsel correctly acknowledged:

> While we are holding off for a second for him to I hope get up here, there are a

---

**8.** Since Wales' sentencing hearing, Congress has amended Rule 32 effective December 1, 2002. The cited-to portion of Rule 32(b)(6)(B) has been re-codified as Rule 32(f)(1) without material change. Although we recognize that Rule 32 has been superseded in pending cases "insofar as is just and

practicable," S.Ct. Order of April 29, 2002, we would reach the same result in this case even under the new rule.

**9.** Rule 32(b)(6)(D) is now codified as Rule 32(i)(3)(A).

couple of things I could go through in the presentence report *that don't affect the calculation of the guidelines,* but I would like to get in the record.

\*　　\*　　\*　　\*　　\*　　\*

On page 5, paragraph 30, there's an adjustment for role in the offense based on some disputed testimony set forth in that paragraph. *Because Mr. Wales as the presentence report reads is a career offender, the two level increase doesn't affect the final offense guideline here.* So I don't know that there's any need to go into any detail about that because the two prior drug convictions which as a result of 4B1.1 elevates his offense level to a 37, so the two points that got him up to a 28 become irrelevant. I did want to bring that to the Court's attention that we dispute that he had a higher—that an aggravating role adjustment is appropriate in this case. We certainly dispute that. We can go through it in more detail if the Court wants, but *given that it doesn't affect the sentence,* I don't know that you necessarily want to do that.

(emphasis added).

Thus, even if the district court had made factual findings on Wales' two level enhancement pursuant to U.S.S.G. § 3B1.1 and the other factual discrepancies contained within the PSR, those rulings would not have had an effect upon Wales' sentence because he was classified as a career offender pursuant to U.S.S.G. § 4B1.1. Qualifying for career offender status resulted in Wales' adjusted offense level being set at 37, and his criminal history category being set at VI, for a resulting sentencing guideline range of 360 months to life imprisonment. Wales received the lowest possible sentence in this guideline range. Therefore, it is clear that Wales' objection to the U.S.S.G. § 3B1.1 enhancement did not affect his sentence,[10] and Rule 32(c)(1) allows district courts to determine that no finding is necessary under these circumstances-a procedure which the district court, *de facto,* employed in this case.[11] *See Id.*[12] ("For each matter contro-

---

**10.** The Court has reviewed the transcript of Wales' sentencing hearing and has concluded that Wales' objections to the other factual discrepancies do not affect the calculation of his sentencing guideline range.

**11.** As for Wales' argument regarding BOP's consideration of his PSR, the Court does not believe that this consideration mandates that he receive a new sentencing hearing. Although it is true that the Advisory Committee considered changing Rule 32 to require district courts to make factual findings upon all disputed portions of PSR's regardless of the finding's impact upon the defendant's sentencing guideline range, in the end, the Advisory Committee decided not to so amend the Rule:

> Finally, the Committee considered, but did not adopt, an amendment that would have required the court to rule on any "unresolved objection to a material matter" in the presentence report, whether or not the court will consider it in imposing an appropriate sentence. The amendment was con-

sidered because an unresolved objection that has no impact on determining a sentence under the Sentencing Guidelines may affect other important post-sentencing decisions. For example, the Bureau of Prisons consults the presentence report in deciding where a defendant will actually serve his or her sentence of confinement.... To avoid unduly burdening the court, the Committee elected *not to require resolution of objections* that go only to service of sentence.... If counsel objects to material in the presentence report that could affect the defendant's service of sentence, the court may resolve the objection, but is not required to do so.

Fed. R.Crim. Pro. 32, Advisory Committee Notes, 2002 Amendments. Thus, even under the current version of Rule 32, the district court did not commit plain error in failing to make factual findings on Wales' objections to the PSR.

**12.** Rule 32(c)(1) is now codified as Rule 32(i)(3)(B).

verted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing."). Accordingly, the Court finds that Wales is not entitled to a new sentencing hearing.

### E. *CONSTITUTIONALITY OF 21 U.S.C. § 841*

■ *Fifth,* Wales argues that his convictions and sentence should be vacated because 21 U.S.C. § 841 is unconstitutional. In support of his argument, Wales cites to *United States v. Buckland,* 259 F.3d 1157 (9th Cir.2001), which held that 21 U.S.C. § 841 is unconstitutional on its face given the United States Supreme Court's holding in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Wales asks the Court to follow and adopt the reasoning of the United States Court of Appeals for the Ninth Circuit and to join in that court's conclusion that 21 U.S.C. § 841 is unconstitutional on its face in light of *Apprendi* because the statute gives the sentencing judge the authority to determine the amount of drugs at issue rather than the jury as the Constitution requires.

The Government notes that an *en banc* panel of the Ninth Circuit has reversed *Buckland.* Furthermore, the Government contends that a decision from the Ninth Circuit has no precedential value in this circuit. Accordingly, the Government asks the Court to find that 21 U.S.C. § 841 is constitutional as written and to uphold Wales' convictions and sentence.

Because Wales did not raise the issue of the constitutionality of 21 U.S.C. § 841 in the district court, this Court reviews this claim for plain error. *United States v. Modena,* 302 F.3d 626, 634 (6th Cir.2002).

As the Government notes, the Ninth Circuit has issued an *en banc* opinion vacating *Buckland, United States v. Buck-*

*land,* 265 F.3d 1085 (9th Cir.2001), and has now held that 21 U.S.C. § 841 does not facially violate the due process clause. *United States v. Buckland,* 289 F.3d 558, 566–67 (9th Cir.2002)(*en banc* ). More importantly, however, this Court has previously considered Wales' argument and has rejected it. *See United States v. Stines,* 313 F.3d 912, 919 (6th Cir.2002)("Our court has considered just such a post-*Apprendi* challenge to the constitutionality of § 841 and has concluded that the statute is not unconstitutional in light of the Supreme Court's decision."); *see also United States v. Martinez,* 253 F.3d 251, 256 n. 6 (6th Cir.2001)("We decline Appellants' invitation to find that 21 U.S.C. § 841 is unconstitutional in light of the Supreme Court's decision in *Apprendi.* "). Being bound by this precedent, we decline Wales' invitation to find 21 U.S.C. § 841 unconstitutional in light of the Supreme Court's holding in *Apprendi.*

### III. CONCLUSION

In summary, the Court finds:

(1) that the jury selection process used by the district court did not deprive Wales of his Sixth Amendment right to be tried by a jury which is comprised of a fair cross-section of the community;

(2) that the district court did not abuse its discretion in admitting evidence at trial of Wales' two prior felony drug convictions pursuant to Federal Rule of Evidence 404(b);

(3) that the Government presented sufficient evidence with which a reasonable jury could find Wales to be guilty beyond a reasonable doubt of both offenses with which he was charged in the Superseding Indictment;

(4) that the district court did not err in adopting the Presentence Investigation Report as written and did not err in failing

to specifically rule upon Wales' objections thereto which he raised for the first time at the sentencing hearing; and

(5) that 21 U.S.C. § 841 is constitutional.

Accordingly, we **AFFIRM** Wales' convictions and sentence.